UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

v. 25 Cr. 503 (JSR)

BRADLEY HEPPNER,

Arraignment

Defendant.

------------------------------x

New York, N.Y.
November 10, 2025
3:00 p.m.

Before:

HON. JED S. RAKOFF,

District Judge

APPEARANCES

JAY CLAYTON
United States Attorney for the
Southern District of New York
BY: DANIEL NESSIM
THOMAS S. BURNETT
ALEXANDRA ROTHMAN
Assistant United States Attorneys

BENJAMIN A. O'NEIL
CHRISTOPHER CLORE
Attorneys for Defendant

Also Present:

Francesca Tessier-Miller, Pretrial Services Officer
Bruno Salemme, Special Agent, Federal Bureau of Investigations

(Case called)

MR. NESSIM: Good afternoon, your Honor.

Daniel Nessim, Thomas Burnett, and Alexandra Rothman for the government.

Joining us at counsel table are FBI Special Agent Bruno Salemme and Pretrial Services Officer Francesca Tessier.

MR. O'NEIL: Good afternoon your Honor.

Ben O'Neil for the defendant, Bradley Heppner.

MR. CLORE: Good afternoon, your Honor.

Christopher Clore for the defendant as well.

THE COURT: Good afternoon.

Please be seated.

So, let me ask defense counsel, have you gone over with your client the indictment in this case?

MR. O'NEIL: We have, your Honor.

THE COURT: And would you like it read again here in open court, or do you waive the public reading?

MR. O'NEIL: We waive the public reading.

THE COURT: And would you like a plea of not guilty to be entered at this time?

MR. O'NEIL: We would.

THE COURT: A plea of not guilty will be entered.

How long does the government want for the completion of discovery?

MR. NESSIM: Your Honor, there is a substantial amount

of discovery in this case, and we're moving as quickly as possible to complete that production and prepare for defense counsel. We are in the process of preparing a large discovery export of 1.6 million documents that are subpoena and voluntary production returns.

In addition, at the time of the defendant's arrest last week in Texas that coincided with the search of his home at which time several electronic devices and paper documents were seized. Those are being processed now. It's a very large quantity. We're moving as quickly as possible. We would ask for several months into the new year.

THE COURT: Denied.

Normally, I expect the government to complete discovery in two weeks. Given the volume of materials that you've just mentioned, I'm willing to extend that, but not remotely to what you're asking for.

If you need to put further people on this, do so.

MR. NESSIM: Understood, your Honor.

Just one other consideration for the Court to be aware of, and we hear the Court and we want to move quickly here and are moving as quickly as we can. There are privileged issues involved in the devices that were seized, paper documents that were seized, both individual privilege, belonging to Mr. Heppner, and also corporate privilege, belonging to Benificient, one of the primary companies involved here and

also other entities.

In order to complete the review of those documents, it would require some period of filter review and also providing those materials to defense counsel to make privilege assertions.

THE COURT: So, that doesn't apply, does it, to the million or so documents you referenced initially.

MR. NESSIM: No. Those are being prepared to be produced and will be produced as soon as they are --

THE COURT: Well, let's set a date for that first.

MR. NESSIM: So your Honor, I believe, and this is, to some degree, due to the technical processing of the vendor and burning it on to a hard drive, but our current understanding is that we can produce that by the end of next week.

THE COURT: Okay that's fine.

MR. NESSIM: With the caveat if something goes wrong in the burning, it might bleed slightly into the following week but our hope will be the end of next week.

THE COURT: Looking at the calendar, we're talking -- let's give it, let's assume a worst case -- for that to be completed by November 20, which is the Thursday of the following week, ten days from today.

Now, let's take the other stuff you just mentioned. Is there any reason why that can't be done by the middle of December?

MR. NESSIM: Our --

(Counsel conferred)

MR. NESSIM: We certainly believe that -- putting aside whatever number of devices we aren't able to access, of the devices we are able to access and intend to proceed in reviewing for responsiveness, we believe that we can get images of those devices by the middle of December.

We'll then need some time for the privilege calls to be made and the responsiveness review to continue, but the images should be available to be produced by the middle of December.

THE COURT: The privilege issues are conversations between the defendant and his counsel?

MR. NESSIM: There may be other types of privileges that defense counsel's referenced, but as far as we're concerned --

THE COURT: Oh. Let me ask defense counsel, what other possible privilege issues would there be?

MR. O'NEIL: Your Honor, the search involved probably a dozen electronic devices, a number of boxes of documents. Certainly there will be conversations between Mr. Heppner and myself or others at the law firm.

THE COURT: You can just exclude it automatically, right, what possible, that there are presumptively privileged from the very fact that they were conversations with counsel,

so the government doesn't have to filter them go through all that rigmarole. They can just not look at them, period.

MR. O'NEIL: Right. I think the issue is that it, on the devices, it's somewhat difficult to tell what's what.

And I mean, I think --

THE COURT: Well, someone might have to look to see, oh, it's a conversation with a lawyer, rather than --

MR. O'NEIL: Right.

THE COURT: -- in a slow day, that would take like, what, 40 seconds, 50 seconds?

MR. O'NEIL: Right.

I think there are also, potentially, conversations on these devices between Mr. Heppner and his spouse, Mr. Heppner and his therapist, Mr. Heppner and his pastor. I can't sit here and represent the full extent, but I think those are potentially the types of issues.

THE COURT: Well, have you given those names to the government?

MR. O'NEIL: We flagged the existence of the privilege. I can provide the names to the government.

THE COURT: In 24 hours, right?

MR. O'NEIL: Sure.

THE COURT: So you'll have those names.

Now, it sounds like just a question of having some independent person not associated with the trial team take a

look and exclude all those.

I don't understand why this would take so long.

MR. NESSIM: Your Honor, we're not sure that it should take so long. It just requires some time to do that review.

And just so the Court's aware, the counsel issue is not just his current criminal counsel here, which I think is obviously an easier determination. During the time of the scheme here, there were many lawyers involved, both representing companies, entities, and Mr. Heppner. And those are historic counsel relationships. There's just a --

THE COURT: So again, all you need is the names. The defense counsel is directed to get you all those relevant names and who they are -- prior counsel, pastor, whatever -- in 24 hours so you can begin the process, promptly.

I don't see why you can't possibly get this done by the middle of December.

MR. NESSIM: Your Honor, may I have one moment?

THE COURT: Yeah.

(Counsel conferred)

MR. NESSIM: Just as a matter of procedure, your Honor, our plan is to image these devices as quickly as possible, produce them to defense counsel to make the privilege calls to avoid any dispute over taint and privilege, and to do this as quickly as possible.

To some degree, the speed of that review is out of the

government's control, based on how we intend to do it, but we believe that --

THE COURT: Well, since it's obviously in defense counsels' interest to get that resolved as promptly as possible, I'll assume -- but I'll ask defense counsel to confirm -- that you will respond to requests as to which are privileged and which are not in a matter of a few days; yes?

MR. O'NEIL: I think we can move -- once we get the devices and we get the images, we can move our privilege review as quickly as humanly possible.

THE COURT: Well, as quickly as humanly possible is more than I require because in that case, since there are, as I recall, hundreds of humans at Quinn Emmanuel, it can probably be done in a matter of an hour or so, but why don't we commit to having you do that within 36 hours upon receipt of the images.

MR. O'NEIL: 36 hours upon receipt of the images, sitting here today, it's very difficult to guarantee it can be done.

THE COURT: Why?

MR. O'NEIL: I just don't know what the volume of --

THE COURT: The first thing you're going to identify is the conversations with counsel, as I indicated previously, and that sounds, to me, like it takes about 30 seconds per item, maybe less.

The conversations with wife, pastor, so forth, may take a little longer, but it can't take more than five minutes per item. So, how can they not be done in three days?

MR. O'NEIL: Let me just -- may I have a moment?

THE COURT: Sure.

(Counsel conferred)

MR. O'NEIL: I think there are two issues that I would just flag. One, if we could have a week from receipt of the devices to make our privilege calls, that would be very much appreciated.

THE COURT: I'll give you a week.

MR. O'NEIL: Okay. Thank you.

With respect to -- I think there's a broader issue though, which is that the government has seized, like, a huge swath of material, which may implicate other people's privilege, not ours.

THE COURT: Our people's privilege. Who?

MR. O'NEIL: Well, I think there are entities associated with Mr. Heppner. He was the former CEO of Benificient the company. I can't say, sitting here, whether some of those, some of the documents in what is there implicate that privilege, and it's not our call to make.

THE COURT: Who is counsel for the company?

MR. O'NEIL: It's a law firm called Haynes and Boone, in Dallas.

THE COURT: A well-known law firm and one I've had the pleasure of having before me. And I know that they are equipped to do it speedily, so it seems to me that, collectively, that can all be done within a one-week period.

Of course, you can't assert that privilege, only they can.

MR. O'NEIL: Right.

THE COURT: So you'd better let them know in advance, like tomorrow, that I'm going to hold them to a speedy response as well.

MR. O'NEIL: Understood.

THE COURT: All right.

So, I come back to the government. Factoring in that week, is there any reason why this can't be completed by the middle of December?

MR. NESSIM: No, your Honor. We can do that.

THE COURT: Good. All right.

So, that other kind of discovery, category two, there is electronic stuff, by -- I'll give you to Friday, December 19.

Now, how much longer after that does defense counsel want for the making of any motions?

MR. O'NEIL: I think in the first instance, we would ask for six weeks.

THE COURT: Well, I'm willing to give you six

weeks, but I don't abide by that in the first instance. Six weeks is it, barring something truly extraordinary.

I don't have with me a 2026 calendar.

THE DEPUTY CLERK: Friday, February 6.

THE COURT: Friday, February 6.

I do have a fantastic courtroom deputy.

So, Friday, February 6, we will hold, then, another conference.

Linda, what do we have on the following Tuesday or Wednesday?

THE DEPUTY CLERK: Tuesday, February 10, is a sentencing at 4, but nothing before that.

THE COURT: Okay. So, let's say 11 a.m. on Tuesday, February 10, we'll have an in-court conference. At that time, any motions that can be dealt with orally will be dealt with orally. Those that require written responses, we'll set a date at that time for a written response.

Now, moving to trial date, how long a trial does the government anticipate?

MR. NESSIM: Your Honor, trial here could involve up to approximately 30 witnesses. We expect it will take --

THE COURT: So you need at least four days, I understand.

MR. NESSIM: We would say approximately four weeks for trial?

THE COURT: Four weeks?

MR. NESSIM: That is our estimate of length.

THE COURT: You've familiarized yourself, I hope, with my practices.

MR. NESSIM: Yes, your Honor.

THE COURT: All right. So, one of my practices is, I usually take the government's estimate and cut it in half, and I usually find that more than sufficient.

But anyway, how about on the defense side.

MR. O'NEIL: Your Honor, at this point, I think, if we put a case on, it's probably roughly a week.

THE COURT: Okay. So, let's look. We will have resolved all motions by the end of February.

So, let me ask this: What dates are counsel not available, if any, in April?

(Counsel conferred)

THE COURT: I assume the government is ready any time, so what dates if any are defense counsel not available?

MR. O'NEIL: We can be available in April.

THE COURT: Okay. So Linda, what's the first Monday in April?

THE DEPUTY CLERK: Monday, April 6.

THE COURT: Okay. So, we'll set the trial down for April 6 at 9:30. I will, in an excess of caution, put aside the entirety of April and the first week of May, though I'm

skeptical that it will, in fact, take that long, but I'll keep that free.

Yes, ma'am.

MS. ROTHMAN: Your Honor, I just have one personal conflict that's already on my calendar for April, so I thought, with the Court's indulgence, I could ask to not sit on April 20. I'll be in Boston running the marathon.

THE COURT: So, what day of the week is that?

MS. ROTHMAN: It's a Monday. It would be the third week of trial, your Honor.

THE COURT: So my current law clerk, not the gentlemen in front of you, but a different law clerk, just completed the New York marathon, and she claims -- though of course, I'm skeptical -- that she was very tired the next day, but I take it that you're only asking for the single day because you're so much more healthy than she is.

MS. ROTHMAN: I would never insult your Honor's law clerk, but I'm only asking for one day.

THE COURT: I will guarantee you off that day.

MS. ROTHMAN: Thank you.

THE COURT: Anything else we need to take up today? I'm going to exclude time in a minute and set bail in a minute, but anything other than that?

MR. NESSIM: A few things, your Honor, just to confirm the December 19 deadline, that's to produce the images of

devices from the search and receive privileged calls back; is that correct?

THE COURT: No.

I'm sorry. That's for you to resolve everything other than the paper stuff, which you told me you could finish your production of by next week.

MR. NESSIM: Okay. Just to flag for the Court, just based on privilege calls, it's possible the government will move at the same time as pretrial motions if there's a crime fraud motion or something like that.

THE COURT: That's fine. And by the way, I assume both sides have familiarized themselves with my individual rules. If any problem arises, feel free to jointly call chambers, and you'll get an instant response.

And if you ask for anything other than changing the time, I'll be very responsive. If you ask for changing the time, the answer of course will be "no," but in all seriousness, I will consider any applications you have.

MR. NESSIM: Thank you, your Honor.

And we've sent a proposed protective order to defense counsel. Once that's you know -- once there's consent among the parties, may we file that with the court without a call in advance?

THE COURT: Yes.

MR. NESSIM: Okay.

THE COURT: So I will exclude, from calculations in the Speedy Trial Act, all time between now and April 6, finding that such time is allegedly necessary for the completion of discovery and also for the drafting and resolution of any motions and the preparation for trial. For those and other reasons, the best interests of justice in excluding such time substantially outweighs the interests of the public and the defendant in a speedy trial.

In terms of bail, since bail was set by a magistrate judge in a different district, I'm told I've got to reconfirm that or hear arguments to the contrary, if there are any, but I'm perfectly happy to adopt the determinations of the magistrate judge, unless either party objects.

MR. NESSIM: No objection from the government.

I will just add that based on the pretrial services interview in the Southern District, we'd like to adjust one additional condition, which is that the defendant provide full financial disclosure to pretrial service as directed.

THE COURT: Any objection to that?

MR. O'NEIL: No.

THE COURT: And you also agree, otherwise, we can adopt the pretrial?

MR. O'NEIL: Yes. Thank you.

THE COURT: Okay. Very good.

And the final thing I wanted to let the defendant

know, as I tell every defendant now, I never penalize anyone for going to trial, so if you were to go to trial and you were convicted, your sentence would be the same as if you pled guilty. I just wanted you to be aware of that.

Well, I look forward very much to your next appearance before me, despite the very leisurely schedule we've set.

Anything else we need to discuss today?

MR. NESSIM: No, your Honor.

Thank you.

MR. O'NEIL: Nothing from the defense.

THE COURT: Very good. Thanks a lot.

(Adjourned)