Q2AFHEPC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

      v.                             25 Cr. 503 (JSR)

BRADLEY HEPPNER,

                                  Conference
         Defendant.

------------------------------x

                                  New York, N.Y.
                                  February 10, 2026
                                  9:00 a.m.

Before:

                  HON. JED S. RAKOFF,

                             District Judge

                    APPEARANCES

JAY CLAYTON
     United States Attorney for the
     Southern District of New York
BY:  DANIEL G. NESSIM
     ALEXANDRA ROTHMAN
     Assistant United States Attorneys

QUINN EMANUEL URQUHART & SULLIVAN LLP
     Attorneys for Defendant
BY:  BENJAMIN O'NEIL
     CHRISTOPHER CLORE
     ROBERT ZINK
     CLARE REARDON

1                    (Case called)
2                    MR. NESSIM:  Good morning, your Honor.
3                    Daniel Nessim and Alexandra Rothman for the
4      government.
5                    THE COURT:  Good morning.
6                    MS. ROTHMAN:  Good morning.
7                    MR. O'NEIL:  Good morning, your Honor.
8                    It's Ben O'Neil, Rob Zink, Christopher Clore and Clare
9      Reardon for the defendant, Mr. Heppner.
10                   THE COURT:  Good morning.
11                   MR. O'NEIL:  Good morning.
12                   THE COURT:  Please be seated.
13                   So, the government filed a motion to overrule the
14     alleged claims of privilege and work product on certain
15     documents that were submitted by the defendant to AI.
16                   I've read the papers, but I'll hear anything further
17     defense counsel wants to say on this.
18                   MR. O'NEIL:  Thank you, your Honor.
19                   Just from here?
20                   THE COURT:  Whatever you'd like.
21                   MR. O'NEIL:  Thanks.
22                   So, I think, based on reading the government's
23     brief, that the government just has a fundamental misconception
24     of what constitutes work product.
25                   THE COURT:  Well, first of all, I don't see any basis

1  for a claim of attorney-client privilege.
2          Did you want to say anything further on that?
3          MR. O'NEIL:  I think what those reports reflect -- and
4  I'm happy to submit the reports for your review *in camera*.
5          THE COURT:  No.  I'm not saying, remotely, any basis
6  for any claim of attorney-client privilege.  If you wanted to
7  say anything further, say it now, but I'm happy to hear you on
8  work product.
9          MR. O'NEIL:  All I would say is that those reports
10 incorporated information that we had conveyed to Mr. Heppner
11 over the course of our representation after learning things
12 from the government.
13         THE COURT:  And he disclosed it to a third-party, in
14 effect, AI, which had an express provision that what was
15 submitted was not confidential.
16         What do you want to say about work product?
17         MR. O'NEIL:  I think both the rule and cases
18 interpreting it indicate that it doesn't matter whether a party
19 created the work product, whether the party did that at the
20 direction of counsel, or whether it was counsel, themselves.
21         If an individual, the defendant here, created a report
22 during -- and in anticipation of litigation, that report is
23 subject to work product protection, whether it was, as I said,
24 created by Mr. Heppner or us, and whether it was done at our
25 direction.

1           I guess the case I would point you to is *Shih v. Petal*
2     *Card*, which is 565 F. Supp. 3d 557 at 57172.  That case says,
3     explicitly, that it doesn't matter whether an attorney directed
4     a client.
5           THE COURT:  What court is that?
6           MR. O'NEIL:  This is Southern District of New York.
7           THE COURT:  Who is the judge?
8           MR. O'NEIL:  That's Magistrate Judge Moses.
9           I think the context of these reports was that in
10    2025, after Mr. Heppner had received a grand jury subpoena,
11    after it was clear with discussions with the government that
12    Mr. Heppner was the target of this investigation and after the
13    government had asked us to come in and present on the
14    facts, Mr. Heppner -- using an AI tool -- prepared reports that
15    outlined defense strategy, that outlined what he might argue
16    with respect to the facts and the law that we anticipated that
17    the government might be charging.
18          I think it's very clear he was preparing these reports
19    in anticipation of a potential indictment, which, ultimately,
20    came in November.
21          The purpose of his preparing these reports was to
22    share them with us so that he could discuss defense strategy
23    with us, we could create his defense strategy.  It's not as if
24    these were documents created during the course of the alleged
25    scheme in which he is --

|   |   |
|---|---|
| 1 | THE COURT:  No, I understand. |
| 2 | The core purpose of Work Product Doctrine is to |
| 3 | protect the mental strategies of counsel in anticipation of |
| 4 | litigation. |
| 5 | How did that relate to this?  This was not something |
| 6 | that reflected your strategy, as I understand what you're |
| 7 | saying. |
| 8 | MR. O'NEIL:  No, I think it did affect our |
| 9 | strategy, your Honor. |
| 10 | THE COURT:  No.  Did it reflect your strategy. |
| 11 | MR. O'NEIL:  No.  As we acknowledge, these were |
| 12 | prepared by the defendant on his own volition. |
| 13 | But again, I would also point to the Rule of Federal |
| 14 | Criminal Procedure 16(b)(2)(A), which says 16(b)(1) does not |
| 15 | authorize discovery or inspection of reports, memoranda, or |
| 16 | other documents made by the defendant or the defendant's |
| 17 | attorney or agent during the case's investigation or defense. |
| 18 | So, I don't think -- |
| 19 | THE COURT:  Okay.  I get your point.  Let me hear from |
| 20 | the government. |
| 21 | MS. ROTHMAN:  Your Honor, I think by Mr. O'Neil's own |
| 22 | concessions, these materials are not attorney work product |
| 23 | because they don't reflect the legal strategy of Quinn Emmanuel |
| 24 | or Mr. Heppner' attorneys; they reflect Mr. Heppner's own |
| 25 | actions, which are simply not covered by the purpose or the |

1   policy behind this rule.

2   And we cited in our brief, I think, the Second
3   Circuit's decision in *Re: Grand Jury Subpoenas* 318 F.3d 379 --
4   it's from 2003 -- really controls here, where the Court was
5   explicit -- and this is on page 11 of our brief -- that if the
6   rule does not shield materials in an attorney's possession that
7   were prepared neither by the attorney nor his agents.

8   And I haven't heard any proffer from defense counsel
9   that these were prepared by attorneys or his agents.  And so
10  both by the clear law of the Second Circuit and the underlying
11  policy reasons, there's no basis to find that the attorney work
12  product protection to apply to these documents.

13  THE COURT:  Isn't it also true that the AI tool that
14  Mr. Heppner used expressly provided that users have no
15  expectation of privacy in their inputs?

16  MS. ROTHMAN:  That's correct, your Honor, as well.

17  So there are sort of multiple hurdles why we don't
18  think defense can establish their burden -- and it is their
19  burden -- to claim privilege.

20  THE COURT:  All right.  The government's motion is
21  granted.

22  Now let's turn to Mr. Heppner's motions.  The first
23  motion is to strike various paragraphs from the indictment as
24  prejudicial or irrelevant.  I just want to be clear that I
25  never, ever submit the indictment to the jury.  I have not done

1  sew in any case in 30 years, and I don't intend to change that
2  policy now.
3         That doesn't mean you don't technically have a right
4  to have things stricken, but I really wonder whether you
5  care, given that the jury is never going to see this
6  indictment.
7         MR. O'NEIL:  So, if it is the case that the jury is
8  not going to see the indictment, I think our arguments
9  are, with respect to surplusage, are probably better framed as
10 motions *in limine*.
11        I think we anticipate making motions with respect to
12 the bankruptcy, with respect to other victims, and with respect
13 to the paragraph in the securities fraud section regarding one
14 transaction that was a loan.
15        THE COURT:  Yeah.  I agree.  I think that most of this
16 is going to come up as motions *in limine*.  Some of them seem to
17 be worthy of having a written response from the government
18 because they've not frivolous at all, but I think that's the
19 right time to bring it up.
20        There may be one or two that need to be decided
21 sooner.  I'm particularly intrigued by the motion to dismiss
22 Count Four as time-barred.
23        But why don't we give the government a chance to
24 respond, so -- and I think you should respond to all the
25 motions, even if some of term turn out to be things we'll take

1       up in a motion *in limine* stage.

2                   But how long do you want to respond?

3                   MR. NESSIM:  Two weeks, your Honor.

4                   THE COURT:  Yeah, that's fine.

5                   Today is the 10th, so that would be the 24th.

6                   And does defense counsel want an opportunity to put in

7       a reply paper?

8                   MR. O'NEIL:  Yes.

9                   THE COURT:  How long do you want for that?  I'll give

10      you either a week or a week, but --

11                  MR. O'NEIL:  We'll take a week.

12                  THE COURT:  Seems reasonable.

13                  Okay.  So that's March 3.  And given that we have the

14      trial in April, I will decide that motion no later than

15      March 10.

16                  I may decide, on some of them, that they should only

17      be raised as motions *in limine*, and the timing for that is set

18      forth by the individual rules.  But to the extent that they

19      affect things that go beyond motions *in limine*, we'll decide it

20      by March 10.

21                  Anything else we need to take up today?

22                  MR. NESSIM:  No, your Honor.  Thank you.

23                  MR. O'NEIL:  Your Honor, I would just flag -- and I'm

24      not exactly sure how this will develop, but -- with respect to

25      the AI reports, should they be presented by the government as

1     evidence, the primary witness with respect to the purpose of
2     the reports, the use of the reports would probably be us, would
3     be Quinn Emmanuel.  And it could create significant
4     conflict, you know, witness-advocate conflict.  So, I think
5     it's just something to flag.
6              THE COURT:  Well, that's an interesting point.  And
7     you put the government on notice.
8              You know, if that were the situation -- and it may not
9     be the situation; I mean, how you can choose to present them; I
10    don't know.
11             MR. O'NEIL:  Yup.
12             THE COURT:  And I'm not sure that any testimony would
13    have to be before the jury -- but maybe it would -- and in that
14    case, the government, if foreseeing that in advance or, at the
15    time, still persisted, we could -- we might have to, at that
16    point, declare a mistrial, in which case I would try the case
17    in -- oh, certainly no later than 2030.  But I just put the
18    government on notice of that.
19             So, anything else we need to discuss?
20             MR. NESSIM:  Your Honor, just on length, the defense
21    had, I think, 15 extra pages.  We would just request the same
22    for our opposition.  We may not need it, but just in case we
23    do.
24             THE COURT:  I'm sorry?
25             MR. NESSIM:  The defense had requested 15 extra pages

1   in their opening motion.  We would just request the same.
2              THE COURT:  Yeah.  You can have a full 15 extra.
3              MR. NESSIM:  Thank you.
4              THE COURT:  Okay.  Anything else?
5              Very good.
6              If there are motions *in limine* -- not just the things
7   we discussed today, but there may be others -- remind me of the
8   exact trial date.
9              MR. NESSIM:  April 6, your Honor.
10             THE COURT:  April 6.
11             MR. NESSIM:  Yes.
12             THE COURT:  All right, we might need to have -- I'm
13  not going to schedule it yet, but we might need to have a
14  pretrial conference on April 3, the Friday before, to go over
15  those motions *in limine*.
16             Actually, why don't we?  We might as well schedule
17  that now, because it will give me a good opportunity to discuss
18  with you my trial procedures, such as the fact that I never
19  allow speaking objections on objections.  But we'll deal with
20  that then.
21             But all right.  What do we have, Linda?
22             THE DEPUTY CLERK:  Thursday, April 2.
23             THE COURT:  No.  Friday, April 3.
24             THE LAW CLERK:  It's Good Friday, Judge.
25             THE COURT:  Oh, it's Good Friday.

Q2AFHEPC

1           Okay.  April 2.
2           THE DEPUTY CLERK:  Thursday, April 2, any time you
3  like.  You just have toe leave at 3:45.
4           THE COURT:  Okay.  Why don't we do 10 a.m. on April 2,
5  tempted though I am by April 1, but April 2.
6           Very good.
7           Thanks very much.
8           (Adjourned)
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25