UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>BRADLEY HEPPNER,<br><br>　　　　　　　Defendant. | No. 1:25-CR-00503 |

**DEFENDANT'S OMNIBUS MOTIONS *IN LIMINE***

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND ........................................................................................................................1

    A.    The Parties and Their Business Relationship..................................................1

    B.    The Charged Counts ......................................................................................2

LEGAL STANDARD FOR MOTIONS IN LIMINE ...................................................................3

MR. HEPPNER'S INDIVIDUAL MOTIONS IN LIMINE .........................................................3

I.    MOTION TO EXCLUDE INADMISSIBLE HEARSAY IN DOCUMENTS LISTED ON THE GOVERNMENT'S EXHIBIT LIST .........................................................3

    A.    Legal Standard for Admissibility of Out-Of-Court Statements..............................3

    B.    Argument........................................................................................................4

II.    MOTION TO EXCLUDE EVIDENCE OF ALLEGED RETAIL INVESTOR LOSSES ........................................................................................................................6

    A.    Legal Standard for Admissibility of Evidence Regarding Losses to GWG Bondholders/Retail Investors........................................................................6

    B.    Argument........................................................................................................6

III.    MOTION TO EXCLUDE INADMISSIBLE EVIDENCE IN THE GOVERNMENT'S 404(B) DISCLOSURE..............................................................7

    A.    Legal Standard for Admissibility under Rule 404(b) ...........................................7

    B.    Argument........................................................................................................8

        1.    The Court Should Exclude Evidence of Mr. Heppner's Alleged Prior Acts Involving Jeffrey Hinkle and Lehman Brothers in 2009. ....................8

        2.    The Court Should Exclude Evidence of Mr. Heppner's Alleged Prior Acts Involving the Dallas Police and Fire Pension System in 2013..........11

        3.    The Court Should Exclude Evidence of Mr. Heppner's Alleged Prior Acts Involving Statements to Jeffrey Hinkle about Lying to Get a Deal Done. ....................................................................................................13

        4.    The Court Should Exclude Evidence of Mr. Heppner's Alleged Prior Acts Involving a $35 Million Payment Modification by Paul Capital in 2018. ....................................................................................................14

IV.    MOTION TO LIMIT EVIDENCE CONCERNING FALSE STATEMENTS TO AUDITORS AND FALSIFICATION OF BOARD MINUTES TO COUNTS FOUR AND FIVE, RESPECTIVELY ...............................................................16

    A.    Legal Standard for Limiting Evidence that Is Relevant for Some Counts But Not Others ..................................................................................................16

B.      Argument..........................................................................................................17

V.    MOTION TO ADMIT EVIDENCE OF STATEMENTS MADE TO MR. HEPPNER.....................................................................................................................17

A.      Legal Standard for Admitting Evidence of Statements Made to Mr. Heppner ....................................................................................................................17

B.      Argument..........................................................................................................18

VI.    MOTION TO REQUIRE THE GOVERNMENT TO ELECT WHICH THEORY OF FRAUD IT WILL PURSUE IN COUNTS 2 AND 3, OR, IN THE ALTERNATIVE, FOR A SPECIAL VERDICT FORM .....................................................19

A.      Factual Background............................................................................................19

B.      Legal Standard ..................................................................................................20

C.      Argument..........................................................................................................21

1.      The Court Should Require the Government to Elect Which Single Fraud Theory It Intends to Pursue Before Trial. .........................................21

2.      In the Alternative, A Special Verdict Form Is Required to Ensure Jury Unanimity and a Just Sentencing Calculation....................................22

CONCLUSION..............................................................................................................24

<u>**TABLE OF AUTHORITIES**</u>

**Page**

<u>**Cases**</u>

*Alvarez v. Garland*,
　33 F.4th 626 (2d Cir. 2022) ............................................................................................. 6

*DeNigris v. New York City Health & Hosps. Corp.*,
　552 F. App'x 3 (2d Cir. 2013) ........................................................................................ 17

*Highland Capital Mgmt., L.P. v. Schneider*,
　551 F. Supp. 2d 173 (S.D.N.Y. 2008) .............................................................................. 3

*Laureano v. City of New York*,
　No. 17-cv-181, 2021 WL 3272002 (S.D.N.Y. July 30, 2021) .......................................... 3

*Luce v. United States*,
　469 U.S. 38 (1984) ............................................................................................................ 3

*Park West Radiology v. CareCore Nat'l LLC*,
　675 F. Supp. 2d 314 (S.D.N.Y. 2009) ............................................................................ 13

*Ramos v. Louisiana*,
　590 U.S. 83 (2020) .......................................................................................................... 22

*Richardson v. United States*,
　526 U.S. 813 (1999) ........................................................................................................ 22

*Steinberg v. Obstetrics-Gynecological & Infertility Grp.*,
　260 F. Supp. 2d 492 (D. Conn. 2003) .............................................................................. 4

*United States v. Adelson*,
　441 F. Supp. 2d 506 (S.D.N.Y. 2006) ............................................................................ 23

*United States v. Aracri*,
　968 F.2d 1512 (2d Cir. 1992) ......................................................................................... 20

*United States v. Bowen*,
　511 F. Supp. 3d 441 (S.D.N.Y. 2021) .............................................................................. 3

*United States v. Brand*,
　467 F.3d 179 (2d Cir. 2006) ............................................................................................. 7

*United States v. Cardascia*,
　951 F.2d 474 (2d Cir. 1991) ............................................................................... 3, 4, 16, 17

*United States v. Curley*,
　639 F.3d 50 (2d Cir. 2011) .......................................................................................... 9, 10

*United States v. David*,
No. 86-cr-454, 1986 WL 13805 (S.D.N.Y. Nov. 21, 1986) ......................................................22

*United States v. Detrich*,
865 F.2d 17 (2d Cir. 1988)............................................................................................................3

*United States v. Downing*,
297 F.3d 52 (2d Cir. 2002)............................................................................................................6

*United States v. Garcia*,
291 F.3d 127 (2d Cir. 2002) .................................................................................... 9, 10, 12, 15

*United States v. Gordon*,
987 F.2d 902 (2d Cir. 1993) .........................................................................................................7

*United States v. Gotti*,
457 F. Supp. 2d 395 (S.D.N.Y. 2006)........................................................................................18

*United States v. Hamilton*,
334 F.3d 170 (2d Cir. 2003) .......................................................................................................16

*United States v. Ilori*,
No. 21-CR-00746 (MKV), 2022 WL 2452258 (S.D.N.Y. July 5, 2022) ...................................4

*United States v. Malka*,
602 F. Supp. 3d 510 (S.D.N.Y. 2022)......................................................................................6, 7

*United States v. McCallum*,
584 F.3d 471 (2d Cir. 2009) .....................................................................................................9, 12

*United States v. Nachamie*,
101 F. Supp. 2d 134 (S.D.N.Y. 2000)................................................................................. *passim*

*United States v. O'Sullivan*,
No. 20-cr-272, 2021 WL 1979074 (S.D.N.Y. May 18, 2021)............................................13, 16

*United States v. Ozsusamlar*,
428 F. Supp. 2d 161 (S.D.N.Y. 2006).........................................................................................3

*United States v. Peterson*,
808 F.2d 969 (2d Cir. 1987) .........................................................................................................9

*United States v. Pitre*,
960 F.2d 1112 (2d Cir. 1992) .....................................................................................................10

*United States v. Quinones*,
511 F.3d 289 (2d Cir. 2007) .........................................................................................................8

iv

*United States v. Robinson*,
No. 17-CR-249, 2017 WL 4466616 (S.D.N.Y. Oct. 5, 2017).............................................10, 12

*United States v. Stein*,
521 F. Supp. 2d 266 (S.D.N.Y. 2007)...............................................................................6

*United States v. Stringer*,
No. 10-cr-632, 2012 WL 11269 (S.D.N.Y. Jan. 3, 2012)..........................................................22

*United States v. Sturdivant*,
244 F.3d 71 (2d Cir. 2001)............................................................................................20, 21

*United States v. Vilar*,
729 F.3d 62 (2d Cir. 2013)..............................................................................................6

*United States v. Viserto*,
596 F.2d 531 (2d Cir. 1979) ...........................................................................................22

## Statutes

18 U.S.C. § 1519........................................................................................................6

U.S.S.G. § 2B1.1.......................................................................................................22

## Other Authorities

17 C.F.R. § 240.13b2-2(a) ...........................................................................................6

Fed. R. Evid. 106 .....................................................................................................18

Fed. R. Evid. 401 ......................................................................................................6

Fed. R. Evid. 403 .............................................................................................. *passim*

Fed. R. Evid. 404(b) .......................................................................................... *passim*

Fed. R. Evid. 801 ....................................................................................................4, 13

Fed. R. Evid. 801(c)................................................................................................3, 4, 17

Fed. R. Evid. 801(d) ...................................................................................................4

Fed. R. Evid. 802 ......................................................................................................4

Fed. R. Evid. 807 ......................................................................................................4

## PRELIMINARY STATEMENT

Bradley K. Heppner ("Mr. Heppner"), by and through his undersigned counsel, respectfully submits this Memorandum of Law in Support of his Omnibus Motion in Limine.

First, Mr. Heppner's Omnibus Motion in Limine seeks to exclude or limit the following categories of evidence:

(i)     exclude certain entries on the Government's exhibit list that constitute inadmissible hearsay;

(ii)    exclude alleged losses to GWG's bondholders;

(iii)   exclude inadmissible evidence that the Government intends to introduce under Rule 404(b); and

(iv)    limit evidence relating to (a) false statements to auditors and (b) falsifying board minutes to Count Four and Count Five, respectively.

Second, Mr. Heppner's Omnibus Motion in Limine seeks to admit certain statements made to Mr. Heppner for a non-hearsay purpose, namely to show his state of mind.

Third, Mr. Heppner's Omnibus Motion in Limine seeks an order (a) requiring the Government to elect which theory of fraud it will pursue in Counts 2 and 3, or, in the alternative, (b) directing that a special verdict form be used to ensure jury unanimity and to permit a just sentencing calculation.

## BACKGROUND

### A.      The Parties and Their Business Relationship

Mr. Heppner was the Chief Executive Officer of Beneficient Company Group, L.P. ("Beneficient"), a financial services company that provided liquidity solutions to holders of illiquid alternative assets.  ECF 3 ("Ind.") ¶¶ 5, 6.

In 2018, GWG Holdings, Inc. ("GWG"), a publicly traded financial services company, decided to acquire an equity interest in Beneficient.  *Id.* ¶¶ 4-5.  GWG had previously raised capital

1

through the issuance of speculative debt securities referred to as "L Bonds" and chose to invest in Beneficient to diversify its income streams. *Id.* Prior to GWG's investment, the existence of a $141 million loan from Highland Consolidated, L.P. Nominees, LLC ("HCLP Nominees"), as well as that entity's affiliation to Mr. Heppner, was disclosed to GWG and its advisors and to the public via securities filings.

In April 2019, Mr. Heppner became the non-executive chairman of GWG's board of directors. *Id.* ¶ 6. Because of the overlap between GWG's and Beneficient's boards, GWG's board created a special committee of independent directors, advised by outside counsel and independent financial advisors, to review and approve transactions between the two companies. *Id.* ¶ 6. Between April 2019 and March 2021, GWG's special committee authorized a loan to and a series of investments in Beneficient, portions of which were earmarked to repay the $141 million loan from HCLP Nominees to Beneficient. *Id.* ¶¶ 13(a)–(e).

## B.    The Charged Counts

The Indictment charges Mr. Heppner with five Counts. Count One alleges that Mr. Heppner committed securities fraud by engaging in a scheme to defraud GWG into transferring funds to Beneficient, in exchange for the purchase of Beneficient's securities. *Id.* ¶ 24. Count Two alleges that Mr. Heppner committed wire fraud by engaging in a scheme to defraud GWG and prospective investors in Beneficient, using wire communications. *Id.* ¶ 26. Count Three alleges that Mr. Heppner conspired to commit securities fraud and wire fraud. *Id.* ¶¶ 27-31. The time period for Counts One through Three is 2018 through 2021. *Id.* ¶¶ 24, 26, 28. Count Four alleges that Mr. Heppner made misrepresentations to Beneficient's auditor in 2019. *Id.* ¶ 33. And Count Five alleges that Mr. Heppner falsified a set of Board minutes in 2021 with the intent to obstruct an investigation by the SEC. *See id.* ¶ 35.

## LEGAL STANDARD FOR MOTIONS IN LIMINE

"A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176–77 (S.D.N.Y. 2008) (citing *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)). "The purpose of a motion *in limine* is to allow a court to rule on the admissibility of potential evidence in advance of trial." *Laureano v. City of New York,* No. 17-cv-181, 2021 WL 3272002, at *1 (S.D.N.Y. July 30, 2021) (quoting *Gucci Am., Inc. v. Guess?, Inc*., 858 F. Supp. 2d 250, 253 (S.D.N.Y. 2012)). A court should exclude evidence on a motion *in limine* when it is "clearly inadmissible on all potential grounds." *United States v. Ozsusamlar*, 428 F. Supp. 2d 161, 164-65 (S.D.N.Y. 2006) (citation omitted). "Because a ruling on a motion *in limine* is subject to change as the case unfolds, [the] ruling constitutes a preliminary determination in preparation for trial." *United States v. Bowen*, 511 F. Supp. 3d 441, 446 (S.D.N.Y. 2021) (citations omitted).

## MR. HEPPNER'S INDIVIDUAL MOTIONS IN LIMINE

### I.    MOTION TO EXCLUDE INADMISSIBLE HEARSAY IN DOCUMENTS LISTED ON THE GOVERNMENT'S EXHIBIT LIST

#### A.    Legal Standard for Admissibility of Out-Of-Court Statements

"Hearsay evidence is any statement made by an out-of-court declarant and introduced to prove the truth of the matter asserted." *United States v. Cardascia*, 951 F.2d 474, 486 (2d Cir. 1991) (citing Fed. R. Evid. 801(c)). "Generally it is not admissible . . . because traditional conditions of admissibility, including that the witness be present at the trial, testify under oath, and be subject to cross-examination, all of which together permit a jury to evaluate the reliability and trustworthiness of a statement, are not present." *Id.* (citing *United States v. Detrich,* 865 F.2d 17, 20 (2d Cir. 1988)). Not every out-of-court statement constitutes hearsay, and not all hearsay is inadmissible; to determine admissibility, the court must analyze "the purpose for which the

3

statement is being introduced" and "whether—if that purpose is to prove the truth of its assertion— the proffered statement fits within any of the categories excepted from the rule's prohibition." *Id.*

"If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay." Fed. R. Evid. 801(c) Advisory Committee Notes (1972). If, on the other hand, an out-of-court statement is offered for the truth of the matter asserted, then the court must determine whether (a) it constitutes hearsay under the Federal Rule of Evidence, and, if so, (b) whether it falls within an exception to the rule against hearsay. *See Steinberg v. Obstetrics-Gynecological & Infertility Grp.*, 260 F. Supp. 2d 492, 495 (D. Conn. 2003) (citing Fed. R. Evid. 801, 802, 803, 804, 807); *see also United States v. Ilori,* No. 21-CR-00746 (MKV), 2022 WL 2452258, at *2 (S.D.N.Y. July 5, 2022). Under Rule 801(d), certain statements are not considered hearsay, including (1) an opposing party's statement, (2) a statement made by a person who the opposing party authorized to make that statement, (3) a statement made by an opposing party's agent or employee on a matter within the scope of that relationship, and (4) a statement of a co-conspirator during and in furtherance of the conspiracy. *See* Fed. R. Evid. 801(d)(2). Rules 803 and 804 set forth several exceptions to the general rule against hearsay. *See* Fed. R. Evid. 803, 804.

### B.    Argument

The Government's exhibit list is full of documents containing out-of-court statements that are neither made by nor to Mr. Heppner and are clearly being offered for the truth of the matters asserted in them. These exhibits do not fall within an exception to the rule against hearsay, nor are they excluded from the definition of hearsay by Rule 801(d)(2). These exhibits must accordingly be excluded.

As just one example, Government Exhibit 1183 is a March 17, 2019 email from GWG's then-CEO John Sabes to GWG's general counsel, Craig Opp, and GWG's chief financial officer,

Bill Acheson. *See* GX 1183 ("Ex. 1"). None of these individuals are alleged to be co-conspirators, nor could any of them have been agents of Mr. Heppner at the time, as Mr. Heppner did not become Chairman of GWG's board until April 2019. Ind. ¶ 6. And yet, the Government seeks to admit Mr. Sabes' out-of-court statement for the truth of what is asserted in it—namely, that Mr. Heppner had previously told Mr. Sabes that HCLP "is a credit company held by the Harmon's who loaned money to get the company going . . . ." *See* Ex. 1 at 1. This exhibit must be excluded.

Likewise, Government Exhibit 1296 is a July 2020 email chain between (a) GWG Special Committee members Pete Cangany and Dave Chavenson, and (b) Tim Evans, GWG's then Chief Financial Officer. *See* GX 1296 ("Ex. 2"). None of these individuals are alleged to be co-conspirators, and none of them are alleged to be agents of Mr. Heppner. They are at most agents of GWG, not Mr. Heppner. The Government nevertheless seeks to admit, among other things, Mr. Evans' statements from July 11, 2020, that the following will require near-term funding: "$25.0 M for Senior Loan extension" and "$3.2 M for debt extension fee on Senior Loan." These exhibits and the hearsay contained in them must be excluded.

Similar exhibits that contain hearsay that is not subject to any hearsay exception include the following: Government Exhibits 1111, 1113-14, 1116, 1130-31, 1137, 1140, 1145, 1209, 1261, 1276, 1281-82, 1290, 1294, 1298, 1308, 1312-13, 1315, 1320-22, 1326, 1332, 1337, 1346, 1353, and 1353A.[1] All such exhibits should be excluded as inadmissible hearsay.

---

[1] Due to the voluminous nature of these exhibits, Defendant will provide copies of these exhibits to the Court directly.

5

## II.   MOTION TO EXCLUDE EVIDENCE OF ALLEGED RETAIL INVESTOR LOSSES

### A.   Legal Standard for Admissibility of Evidence Regarding Losses to GWG Bondholders/Retail Investors

To be admissible, evidence must have a "tendency to make a fact more or less probable than it would be without the evidence" and that fact must be "of consequence in determining the action." Fed. R. Evid.  401. Even if evidence is relevant, it may nevertheless be excluded "if its probative value is substantially outweighed by the danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury . . . ." Fed. R. Evid.  403. The proponent of the evidence bears the burden of establishing its admissibility.  *See United States v. Stein,* 521 F. Supp. 2d 266, 268 (S.D.N.Y. 2007).

### B.   Argument

In the Indictment, the Government alleges that GWG "was unable to satisfy more than $1 billion in obligations to more than 15,000 L-bond investors," and that "[t]hose losses fell primarily on retail investors, many of them retirees who had invested their savings based on representations that L-bonds constituted safe, income-generating investments." Ind. ¶15. This emotionally charged language and the evidence that potentially supports it are irrelevant to whether Mr. Heppner committed any of the five charged offenses.  Crucially, no charged count requires proof of loss—not securities fraud, *see United States v. Vilar*, 729 F.3d 62, 88-89 (2d Cir. 2013), not wire fraud, *see Alvarez v. Garland*, 33 F.4th 626, 642 n.23 (2d Cir. 2022), not conspiracy, *see United States v. Downing*, 297 F.3d 52, 57 (2d Cir. 2002), not making false statements to auditors under 17 C.F.R. § 240.13b2-2(a), and not falsifying records under 18 U.S.C. § 1519. And even if harm to GWG's bondholders did have some marginal relevance, Rule 403 requires exclusion of it.  The imagery of thousands of elderly retirees who lost their life savings is a paradigmatic appeal to sympathy rather than proof of any of the alleged crimes.  *United States v. Malka*, 602 F. Supp. 3d

6

510, 527 (S.D.N.Y. 2022) ("Applying Rule 403, courts have routinely excluded evidence that, even if relevant, might improperly confuse the jury or influence jurors by unduly distracting their attention from the charged crimes through sympathy.").

As the Court itself repeatedly recognized at the hearing on April 6, 2026, losses to GWG bondholders simply are not relevant. Indeed, the Court specifically noted that, if the Government expects "to be able to get up and say, Ladies and gentlemen of the jury, this is a case of how poor bondholders who have put their life stakes at risk were defrauded, [it's] going to create a mistrial." Apr. 6, 2026 Hearing Tr. at 5:14-17. The evidence must accordingly be excluded.

## III.    MOTION TO EXCLUDE INADMISSIBLE EVIDENCE IN THE GOVERNMENT'S 404(B) DISCLOSURE

### A.    Legal Standard for Admissibility under Rule 404(b)

Federal Rule of Evidence 404(b) prohibits the admission of evidence of any other crime, wrong, or act to prove a person's bad character in order to show that on a particular occasion the person acted in accordance with that bad character. *See* Fed. R. Evid. 404(b)(1). While the Rule permits such evidence to be offered for limited purposes—such as "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, or lack of accident"—admission for these purposes is not automatic. The offering party must satisfy a four-part test: the evidence must be (1) offered for a proper purpose; (2) relevant to a disputed issue in the case; (3) of probative value that substantially outweighs the danger of unfair prejudice under Rule 403; and (4) accompanied by an appropriate limiting instruction if requested. *United States v. Brand*, 467 F.3d 179, 196 (2d Cir. 2006). Even where a nominally permissible purpose is identified, the evidence must nevertheless be excluded if the prior acts are "not sufficiently similar to the conduct at issue." *United States v. Gordon*, 987 F.2d 902, 909 (2d Cir. 1993). And regardless of purpose, the court "retains discretion" to exclude evidence whose prejudicial effect outweighs its probative value

under Rule 403.  *United States v. Quinones*, 511 F.3d 289, 309–11 (2d Cir. 2007) (citing Fed. R. Evid. 403).

### B.    Argument

The Government's 404(b) notice, *see* Ex. 3 ("404(b) Notice"), includes evidence that is temporally remote from and irrelevant to the charged conduct, and that is unfairly prejudicial. Such evidence must be excluded.  The Government's notice includes evidence of the following:

- In 2009, Mr. Heppner allegedly learned from Jeffrey Hinkle information about balances in accounts controlled by Lehman Brothers, to which Mr. Heppner knew he was not entitled, for the purpose of gaining a financial advantage in ongoing negotiations with Lehman Brothers;

- In 2013, Mr. Heppner allegedly disclosed to the Dallas Police and Fire Pension System ("DPFPS") that Beneficient owed a debt to HCLP, and that HCLP was controlled by Mr. Heppner.  DPFPS elected not to invest in Beneficient because, among other things, DPFPS allegedly wanted Mr. Heppner to have "skin in the game" and not get paid out first from the existing loan;

- At an unknown point in time, Mr. Heppner allegedly told Jeffrey Hinkle that his mentor, Charles Harmon, had advised him to "lie lie lie" to get deals done; and

- In December 2018, Mr. Heppner allegedly directed Bill Banowsky to make misrepresentations to Paul Capital Advisors about the independence of the "senior lender" to induce Paul Capital to forgive a $35 million payment Beneficient was obligated to make.

None of this evidence bears a sufficiently close relationship to the charged scheme—an alleged fraud on GWG and prospective investors in Beneficient between 2018 and 2021—and each instance of conduct presents risks confusion of the issues and unfair prejudice that will outweigh any probative value the evidence might otherwise have.  It should be excluded.

> ### 1.    *The Court Should Exclude Evidence of Mr. Heppner's Alleged Prior Acts Involving Jeffrey Hinkle and Lehman Brothers in 2009.*

The Government has noticed its intent to offer evidence that "in or about 2009, the defendant learned from co-conspirator Jeffrey Hinkle information about balances in accounts controlled by Lehman Brothers Inc., to which the defendant knew he was not entitled, for the

8

purpose of gaining a financial advantage in ongoing negotiations with Lehman Brothers." 404(b) Notice ¶ 2. The Government also intends to offer further "evidence that Lehman Brothers terminated Hinkle for the misappropriation of this information," and that "the defendant thereafter hired Hinkle to work for him at Beneficient, promising Hinkle significant financial compensation once Beneficient secured outside funding." *Id.* The Government contends this evidence is admissible as "direct proof of the charged offenses" and "as proof of the defendant's knowledge and intent, the existence and development of a plan, and the relationship of trust between Hinkle and the defendant." *Id.* The Government is wrong.

First, Mr. Heppner's alleged knowledge, from Mr. Hinkle, about Lehman Brothers account balances bears no meaningful connection to the charged conduct and does not serve any of the permissible purposes under Rule 404(b), including "proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). "To satisfy the relevance inquiry, the evidence must be 'sufficiently similar to the conduct at issue to permit the jury reasonably to draw from that act the [state of mind] inference advocated by the proponent of the evidence.'" *United States v. Curley*, 639 F.3d 50, 57 (2d Cir. 2011) (quoting *United States v. Peterson*, 808 F.2d 969, 974 (2d Cir. 1987)) (alteration in original). The Government "must identify a similarity or connection between the two acts that makes the prior act relevant to establishing knowledge of the current act," *United States v. Garcia*, 291 F.3d 127, 137 (2d Cir. 2002); *see also United States v. McCallum*, 584 F.3d 471, 475 (2d Cir. 2009), and without that connection, "the prior act is not relevant or probative and is inadmissible," *Garcia*, 291 F.3d at 138. The Government has identified no such connection here, and none exists.

Further, the evidence relating to Mr. Heppner's alleged knowledge, through Mr. Hinkle, about the Lehman Brothers account balances and the alleged scheme to defraud GWG and

9

prospective investors in Beneficient bear none of the same features: one involves the alleged knowledge of financial information that defendant allegedly "knew he was not entitled to" in a private negotiation; the other involves the alleged fabrication of a debt structure and alleged misrepresentations to GWG and prospective investors in Beneficient, more than a decade later. 404(b) Notice ¶ 2. The only connection the Government can draw between Mr. Heppner's alleged knowledge about the Lehman Brothers account balances and the charged GWG/prospective Beneficient investor scheme is the presence of Mr. Hinkle and some general form of dishonesty. This attempt to establish categorical similarity is insufficient. *See United States v. Robinson*, No. 17-CR-249, 2017 WL 4466616, at * 3 (S.D.N.Y. Oct. 5, 2017) (excluding prior acts where "[t]he only similarities" were categorical, reaffirming that the government "may not invoke Rule 404(b) and proceed to offer, carte blanche, any prior act of the defendant in the same category of crime") (quoting *Garcia*, 291 F.3d at 137). That both sets of conduct involved some form of alleged deception is not a "similarity or connection" within the meaning of *Garcia* and *Curley*, and is not sufficient to permit such evidence to be admitted.

Second, even if the Government contends that this evidence is admissible to explain the development of the "relationship of trust between Hinkle and the defendant," *see* 404(b) Notice ¶ 2, the connection between the 2009 conduct and the charged scheme is far too attenuated to sustain admission. *See United States v. Pitre*, 960 F.2d 1112, 1119 (2d Cir. 1992) (recognizing that "[p]rior act evidence may be admitted to inform the jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between participants in the crime developed"). To be admissible, the Government must establish a direct link between the prior act and the co-conspirator dynamics of the charged scheme. *See United States v. Nachamie*, 101 F. Supp. 2d 134, 146 (S.D.N.Y. 2000) (rejecting

10

relationship of trust argument where "the bad act evidence introduced in those cases established a more direct link between the defendant and the co-conspirators" than the prior act at issue, and where "other, less prejudicial evidence" was available). The Government's theory requires the jury to draw inferences across a decade-long gap, from conduct in 2009 involving Lehman Brothers account information, to a 2018-2021 alleged fraud on GWG and prospective investors in Beneficient involving entirely different conduct, different parties, and a different mechanism of deception. That chain of inferences is simply too attenuated to sustain admission and the evidence should be excluded.

2. *The Court Should Exclude Evidence of Mr. Heppner's Alleged Prior Acts Involving the Dallas Police and Fire Pension System in 2013.*

The Government has noticed its intent to offer evidence that "[i]n or about 2013, the defendant solicited an investment in Beneficient from the Dallas Police and Fire Pension System ('DPFPS')," and, in connection with that solicitation, the "defendant and Hinkle acting at the defendant's control disclosed that Beneficient owed a debt to HCLP, and that HCLP was controlled by the defendant, not a third party." 404(b) Notice ¶ 3(a). According to the Government, "DPFPS elected not to invest in Beneficient because, among other things, DPFPS wanted the defendant to have 'skin in the game' and not get paid out first from the existing loan." *Id.* The Government contends this evidence is admissible as "direct proof of the charged offenses," as proof of "the defendant's knowledge and intent, the existence and development of a plan, and the relationship of trust between Hinkle and the Defendant." *Id.* It is not.

First, the DPFPS solicitation is wholly separate, distinct, and far removed in time from the charged conduct. The DPFPS solicitation involved a separate entity, a separate transaction, and a separate set of parties from the charged GWG/prospective Beneficient investors scheme. The Government has not "identif[ied] a similarity or connection between the two acts that makes the

11

prior act relevant to establishing knowledge of the current act," *Garcia*, 291 F.3d at 137; *see also McCallum*, 584 F.3d at 475.  Pointing to the fact that both interactions involved HCLP is no more than the categorical similarity that has been consistently rejected.  *See Robinson*, 2017 WL 4466616, at *3.  That both interactions involved HCLP is not a "similarity or connection" within the meaning of *Garcia*, it is simply the same entity appearing in two different transactions, years apart, involving different counterparties.

Second, even if the DPFPS evidence clears the threshold of relevance, its admission would be substantially more prejudicial than probative and should be excluded under Rule 403. The Government's own disclosure concedes that "DPFPS elected not to invest in Beneficient," there was no victim, no loss, and no completed transaction.  404(b) Notice ¶ 3(a).  Evidence of a failed solicitation to a separate entity years before the charged conduct carries marginal probative value at best.  And the Government does not even allege that Mr. Heppner's alleged disclosures about his control over HCLP were the determinative factor in DPFPS's decision not to invest in Beneficient.  *See* 404(b) Notice ¶ 3(a) (conceding that DPFPS's decision not to invest was based on, "among other things," DPFPS allegedly not wanting Mr. Heppner to get paid out first from the existing loan).  Where, as here, "the incremental value of other-crime evidence on the issue of intent" is "slight, and the possibility of prejudice through misuse by the jury great, the court should exclude the evidence under Rule 403." *Nachamie*, 101 F. Supp. 2d at 144 (quoting  J. Weinstein, M. Berger, & J. McLaughlin, Weinstein's Evidence, § 404.21(3)(a), at 404-62 (2d ed. Aug. 1997)).

Third, and finally, the Court should exclude the DPFPS evidence because it is unreliable and would lead to a mini-trial on uncharged conduct.  In an interview that occurred less than a month before the Government provided its 404(b) Notice, DPFPS's Chief Investment Officer, Ryan Wagner, informed the Government that he "did not recall a debt on BEN's books nor a plan

12

for DPFP to pay off that debt as being part of the proposed deal," and that "[t]he repayment of debt was not an issue discussed before DPFP's board."  MOI of 2/27/26 Interview of Ryan Wagner ("Ex. 7") at 1-2.  Mr. Heppner expects to vigorously contest any notion that DPFPS declined to invest in Beneficient because of alleged disclosures about Mr. Heppner's control over HCLP; indeed, Mr. Heppner plans to contest that DPFPS cared at all about any debt related to Beneficient.  Courts in this District routinely exclude 404(b) evidence that promises to create such mini-trials over ancillary matters.  *See, e.g.*, *United States v. O'Sullivan*, No. 20-cr-272, 2021 WL 1979074, at *12 (S.D.N.Y. May 18, 2021) (excluding proffered 404(b) evidence because it "would improperly turn the trial into a 'multi-ringed sideshow of mini-trials on collateral issues' that would cause confusion and undue delay.") (quoting *Park West Radiology v. CareCore Nat'l LLC*, 675 F. Supp. 2d 314, 325 (S.D.N.Y. 2009)).  This Court should do the same.

       3.       *The Court Should Exclude Evidence of Mr. Heppner's Alleged Prior Acts Involving Statements to Jeffrey Hinkle about Lying to Get a Deal Done.*

The Government has noticed its intent to offer evidence that "the defendant told [Jeffrey] Hinkle, in sum and substance and among other things, that the defendant's mentor Charles Harmon taught [Mr. Heppner], in sum and substance, that if you want to get a deal done, you need to 'lie lie lie' and if that does not get the deal done, you need to 'lie some more.'" 404(b) Notice ¶ 5. The Government contends that this evidence is admissible as "direct proof of the charged offenses," as "proof of the defendant's knowledge and intent, the existence and development of a plan, and the relationship of trust between Hinkle and the defendant." *Id.* The Government is wrong.

First, the statement that Mr. Heppner was told to "lie lie lie" is double hearsay.  It is an account by Mr. Hinkle, a cooperating witness with every incentive to provide damaging testimony, of what Mr. Heppner allegedly told him that his mentor Charles Harmon had said.  This is classic hearsay.  *See* Fed. R. Evid. 801. It is undated, uncorroborated, and lacks any factual or temporal

anchor connecting it to the charged scheme.  Without knowing when this statement was made, it is impossible to assess its relevance to the charged conduct or its connection to any specific element of the charged offense.

Second, the statement is not evidence of a specific act, crime, or wrong, it is an alleged statement about Mr. Heppner's general approach to business dealings, which is the definition of propensity evidence that Rule 404(b) exists to prohibit.  A vague statement allegedly relayed to Mr. Hinkle that Mr. Heppner's mentor advised him to lie is not evidence of knowledge or intent with respect to the charged scheme, it is evidence of character, and Rule 404(b) prohibits its admission on that basis.  *See also Nachamie*, 101 F. Supp. 2d at 140 ("The danger inherent in Rule 404(b) is that, even though the evidence of other crimes is admissible for a proper purpose, the jury still might use it as evidence of the defendant's bad character.").

Third, to the extent the Government seeks to use this statement to establish background information like the relationship of trust between Mr. Heppner and Mr. Hinkle, less prejudicial alternatives are available, including Hinkle's own testimony about the nature and duration of that relationship.  *See id.* at 146 (rejecting relationship-of-trust argument where "other, less prejudicial evidence" was available to make the same point).

    4.     *The Court Should Exclude Evidence of Mr. Heppner's Alleged Prior Acts Involving a $35 Million Payment Modification by  Paul Capital in 2018.*

The Government has noticed its intent to offer evidence that "in or about December 2018, the defendant and his long-time attorney and co-conspirator, William Banowsky, made false and misleading representations to [Paul Capital] and its representatives regarding HCLP and HIHT to induce [Paul Capital] to forgive a $35 million payment Beneficient was obligated to make." 404(b) Notice ¶ 6. According to the Government, these alleged false and misleading representations include statements made by Mr. Banowsky at the "defendant's direction" that "the senior lender

14

is real and is acting independently," as well as threats to "default if [Paul Capital] did not agree to the modification requested." *Id.* The Government contends this evidence is admissible as "direct proof of the charged offenses," as proof of "the defendant's knowledge and intent, the existence and development of a plan" and "the relationship of trust between Banowsky and defendant." *Id.* It is not.

First, the alleged scheme to induce Paul Capital to forgive a $35 million payment obligation is totally separate from and irrelevant to the charged scheme, which involves alleged misrepresentations to GWG and prospective Beneficient investors. In the charged scheme, Paul Capital's relevance is limited: GWG acquired Paul Capital's interest in Beneficient, stepping into its position as an outside investor. The fact that "the defendant and . . . [Mr.] Banowsky" allegedly made misrepresentations to Paul Capital to induce it to forgive a $35 million payment obligation has no bearing on the charged transaction or on the misrepresentations Mr. Heppner allegedly made to GWG and prospective investors in Beneficient. To be clear, the alleged $35 million payment obligation to Paul Capital is totally separate from the $141 million loan to Beneficient that is discussed at length in the Indictment. No "similarity or connection" exists between the two schemes, thus, the prior act evidence proffered by the Government, "is not relevant or probative and is inadmissible," *Garcia*, 291 F.3d at 138.

Second, even if the Paul Capital payment-modification evidence has some marginal relevance, its admission would cause substantial unfair prejudice and confuse the jury. The $141 million HCLP debt at the heart of the Government's fraud allegations originated from a three-year, arm's-length negotiation with Paul Capital, a sophisticated institutional investor represented by independent counsel. Introducing evidence of a single, unrelated $35 million payment obligation *from* Beneficient *to* Paul Capital would only confuse the jury. The probative value of this evidence,

15

if any, is substantially outweighed by the risk of unfair prejudice and jury confusion, and it should be excluded under Rule 403.

Third, the Government already has direct evidence of the relationship between Mr. Heppner and Mr. Banowsky through the charged conduct itself, rendering the Paul Capital payment-obligation evidence cumulative, if used for that purpose. Where "other, less prejudicial evidence" is available to make the same point, the relationship-of-trust rationale cannot sustain admission. *Nachamie*, 101 F. Supp. 2d at 146. It should be excluded.

And finally, Mr. Heppner expects to contest the facts of this ancillary issue, which would lead to an unnecessary and unwarranted mini-trial on whether Mr. Heppner and others fraudulently induced Paul Capital to forgive the alleged $35 million payment obligation. *See O'Sullivan*, 2021 WL 1979074, at *12.

## IV. MOTION TO LIMIT EVIDENCE CONCERNING FALSE STATEMENTS TO AUDITORS AND FALSIFICATION OF BOARD MINUTES TO COUNTS FOUR AND FIVE, RESPECTIVELY

### A. Legal Standard for Limiting Evidence that Is Relevant for Some Counts But Not Others

Where evidence is probative of one count but not others, courts must guard against "prejudicial spillover"—the risk that evidence will improperly influence the jury's consideration of counts to which it does not speak. *United States v. Hamilton*, 334 F.3d 170, 182 (2d Cir. 2003) (noting that the concept of prejudicial spillover "requires an assessment of the likelihood that the jury, in considering one particular count or defendant, was affected by evidence that was relevant only to a different count or defendant") (citations omitted). In such a situation, a strong limiting instruction is warranted. *See, e.g., United States v. Cardascia*, 951 F.2d 474, 483-84 (2d Cir. 1991) (noting that "the trial judge repeatedly instructed [the jury] to avoid spillover prejudice").

16

**B.     Argument**

The Indictment's Five Counts rest on three distinct courses of conduct, each involving different parties, different purposes, and a different evidentiary basis.  Counts One through Three charge a fraud on GWG and on "prospective investors in Beneficient" (for Counts Two and Three).  Count Four charges false statements to Beneficient's auditor.  Count Five charges the falsification of board minutes to obstruct an SEC investigation.  Yet the Government seeks to present evidence of all three at once—inviting the jury to treat fabricated emails sent to Deloitte (Count Four) and falsified minutes sent to the SEC (Count Five) as proof that Mr. Heppner defrauded GWG or prospective investors in Beneficient. But evidence probative only of Counts Four and Five should be excluded from the jury's consideration of Counts One through Three.

Mr. Heppner therefore respectfully requests a limiting instruction directing the jury that: (a) evidence of the alleged false statements to auditors, including fabricated emails and backdated documents, may be considered only in connection with Count Four; (b) evidence of the falsified October 2019 minutes may be considered only in connection with Count Five; and (c) the jury must evaluate Counts One through Three solely on evidence of what was communicated to GWG or prospective investors. *See Cardascia*, 951 F.2d at 483-84.

**V.     MOTION TO ADMIT EVIDENCE OF STATEMENTS MADE TO MR. HEPPNER**

**A.     Legal Standard for Admitting Evidence of Statements Made to Mr. Heppner**

"If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay." Fed. R. Evid. 801(c) Advisory Committee Notes (1972).  "Where [out-of-court] statements are offered to show their effect on a listener's state of mind, they are not hearsay." *DeNigris v. New York City Health & Hosps. Corp.*, 552 F. App'x 3, 6 (2d Cir. 2013).  Thus, courts admit statements to defendants when offered for their effect on the listener, rather than for the truth of the matters asserted.  *See, e.g.,*

17

*United States v. Gotti*, 457 F. Supp. 2d 395, 399 (S.D.N.Y. 2006) ("Because Ruggiero's statement is not offered to prove the truth of the matter asserted with respect to DiLeonardo's attitude, it is not hearsay. Ruggiero's statement is offered to show its effect on Gotti during the time period when Gotti is charged with witness tampering."). Such statements may also be admitted under Fed. R. Evid. 106 because the Government is not allowed "to cherry pick the statements it wants to admit . . . and create a skewed picture of the facts." *Id.*

### B.    Argument

Mr. Heppner's exhibit list has certain documents containing out-of-court statements that were made to Mr. Heppner and are relevant to his state of mind. As such, they should be admitted.

For example, in Defense Exhibit 1504, Mr. Heppner is informed by Derek Fletcher on October 3, 2019 that "All of the statements made about the inability of Brad and his family to change the managers of HCI and CMH are still correct." *See* DX 1504 ("Ex. 4"). Similarly, in Defense Exhibit 1502 Mr. Heppner is informed by Bill Banowsky on September 25, 2019 that "[t]he first question the ERC is asking has already been answered by Deloitte: Brad Heppner does not control HCLP Nominees," and that "the Board, through this review, is seeking information that is really none of their damn business." *See* DX 1502 ("Ex. 5"). Finally, Mr. Heppner is informed by Mr. Banowsky on September 25, 2019 in Defense Exhibit 1503 that Mr. Banowsky "started looking at accounting definitions of control and it circles back the consolidation issue you spent so much time on with Deloitte. This has been exhaustively looked at already. This review is so unnecessary." *See* DX 1503 ("Ex. 6"). These exhibits and others that are similar should be admitted for their effect on Mr. Heppner's state of mind.

18

## VI.    MOTION TO REQUIRE THE GOVERNMENT TO ELECT WHICH THEORY OF FRAUD IT WILL PURSUE IN COUNTS 2 AND 3, OR, IN THE ALTERNATIVE, FOR A SPECIAL VERDICT FORM

Count Two charges wire fraud based on a scheme to defraud two distinct alleged victims: (1) GWG Holdings, Inc. and (2) "prospective investors in Beneficient." Ind. ¶ 26. Count Three charges conspiracy incorporating the same dual-victim wire fraud theory. *Id.* ¶¶ 28, 30. This dual-victim structure has now been thrown into sharp relief by the Government's exhibit production. A substantial portion of the Government's exhibits relate not to any fraud on GWG but to representations allegedly made to persons considering investments in Beneficient itself—a separate theory, a different victim class, and a different evidentiary predicate. The Government should be required to elect which theory it will pursue before trial, so that the defense can prepare accordingly and the jury can render a verdict with constitutional validity. In the alternative, if the Court permits the Government to proceed on both theories, a special verdict form is required to ensure jury unanimity and to permit a just sentencing calculation.

### A.    Factual Background

The Indictment charges that Mr. Heppner used wire communications "to defraud GWG and prospective investors in Beneficient about the origins of Beneficient's debt, the extent to which HEPPNER would benefit from repayments on that debt, and the extent to which HEPPNER directed the entities that controlled that debt . . . ." *Id.* ¶ 26.

The two alleged fraud theories are factually and legally distinct in every material respect. The GWG fraud theory involves a specific identified victim; specific transactions totaling approximately $300 million; specific misrepresentations to GWG's Special Committee between May 2019 and March 2021; and losses the Government will argue exceed $1 billion through GWG's April 2022 bankruptcy. *Id.* ¶¶ 13–15.

19

The prospective Beneficient investor theory is a different matter entirely. The Indictment's only allegations on this theory are that Heppner "concocted a story to tell investors" and "tried out this misleading story on prospective investors" in the pre-2019 period. *Id.* ¶¶ 10–11. This theory involves no identified victim, no completed investment transaction, no specified wire communication to any specific person, and no calculable pecuniary loss.

The Government's exhibit production has now confirmed that these two theories require fundamentally different bodies of proof. Government Exhibits 1101–1366 include substantial evidence directed at the prospective investor theory—communications with entities such as Oaktree Capital and Infinedi Partners, private placement memoranda, and representations about the HCLP structure made before GWG's involvement began. This evidence has nothing to do with representations made to GWG's Special Committee and would be largely irrelevant—and substantially prejudicial—if the Government were limited to the GWG fraud theory. Conversely, the Special Committee-focused evidence relating to the 2019–2021 transactions is the heart of the GWG fraud theory and would be equally mismatched with a trial focused solely on prospective investor fraud. The two theories require different witnesses, different documents, different time periods, and different defense strategies.

### B.    Legal Standard

An indictment is duplicitous when it charges two separate offenses in a single count. *United States v. Aracri*, 968 F.2d 1512, 1518 (2d Cir. 1992). The prohibition against duplicity serves three purposes: ensuring unanimous jury agreement on a single offense, preventing double jeopardy exposure, and allowing the court to impose an appropriate sentence. *Id.* (quotations omitted). The appropriate remedy at the pretrial stage is to require the Government to elect which theory it will pursue. *See United States v. Sturdivant*, 244 F.3d 71, 75–76 (2d Cir. 2001).

C.    **Argument**

      *1.    The Court Should Require the Government to Elect Which Single Fraud Theory It Intends to Pursue Before Trial.*

Count Two is duplicitous. It alleges fraud on GWG—a completed scheme involving an identified victim, specific transactions, and quantifiable losses—and separately alleges fraud on unidentified prospective investors in Beneficient through representations made in a different time period to a different audience. These are not alternative means of committing the same fraud. They are two distinct frauds charged in one count.

Election is the right remedy here for a reason that has become apparent only through the Government's exhibit production: the two theories do not merely present an abstract duplicity problem—they require the defense to litigate two fundamentally different cases simultaneously. The exhibits directed at prospective investor fraud—pre-2019 private placement materials, investor communications, representations about the HCLP structure made years before GWG's involvement—require the defense to address a wholly separate factual narrative with different witnesses and different documents than those bearing on the GWG fraud theory. Requiring the defense to prepare against both theories simultaneously, when the Government's own production has confirmed they are substantively distinct, is precisely the prejudice that the election remedy is designed to prevent.

This is the appropriate stage to seek that relief. In light of the Indictment's threadbare allegations on this topic, the defense could not have known before receiving the Government's exhibit production how substantially the prospective investor theory would be developed at trial. Now that the production has been reviewed and the evidentiary scope of each theory is clear, a pretrial motion *in limine* is both timely and the proper vehicle. *United States v. Sturdivant,* 244 F.3d 71, 76 (2d Cir. 2001) (citations omitted) (noting that duplicity objections are waivable and

21

should be raised pretrial when apparent from the face of the indictment or from the record); *United States v. Viserto,* 596 F.2d 531, 538 (2d Cir. 1979) ("Since the alleged duplicitous character of the counts appears on the face of the indictment, appellants could have moved before trial to dismiss the indictment."). The Government's exhibit production has made the scope and separateness of the two theories apparent for the first time, and this motion is filed promptly upon that realization.

The same analysis applies with equal force to Count Three. The conspiracy count charges Mr. Heppner with conspiring to commit, among other objects, the wire fraud described in Count Two. To the extent Count Two is duplicitous, Count Three incorporates and perpetuates the same problem with respect to the wire fraud object of the conspiracy.

> 2. *In the Alternative, A Special Verdict Form Is Required to Ensure Jury Unanimity and a Just Sentencing Calculation.*

If the Court permits the Government to proceed on both theories, a special verdict form is required. The Sixth Amendment requires that a criminal conviction rest on the unanimous agreement of twelve jurors. *Ramos v. Louisiana*, 590 U.S. 83, 90 (2020). Where a single count charges multiple factually distinct fraud theories, jurors must be unanimous as to which theory supports the conviction. *Richardson v. United States*, 526 U.S. 813, 817–20 (1999). A general verdict of guilty does not reveal whether the jury unanimously found guilt on the GWG theory, the prospective investor theory, or whether jurors were divided between the two. *See United States v. Stringer,* No. 10-cr-632, 2012 WL 11269, at *13 (S.D.N.Y. Jan. 3, 2012), *aff'd,* 730 F.3d 120 (2d Cir. 2013) ("The purpose of the special verdict form was to *avoid* confusing the jury.")

The sentencing consequences make this urgent. *See United States v. David,* No. 86-cr-454, 1986 WL 13805, at *2 (S.D.N.Y. Nov. 21, 1986) ("[A] special verdict would easily clarify any ambiguities the Court might otherwise face on sentencing."). Under U.S.S.G. § 2B1.1, loss amount is the dominant variable in the Guidelines calculation. Fraud on GWG, if found, produces

a loss the Government will argue exceeds $300 million. Fraud on unidentified prospective investors who completed no investment produces a loss of zero. The difference could translate to decades of additional imprisonment. A general verdict form cannot establish which theory the jury found, and therefore cannot establish whether any loss occurred. The Government should not be permitted to use a general verdict to attribute a $300 million loss to a conviction that may rest on a zero-loss theory. This Court has recognized that mechanical application of loss-based Guidelines calculations to facts juries did not actually find produces unjust results. *See United States v. Adelson*, 441 F. Supp. 2d 506, 512–16 (S.D.N.Y. 2006) (Rakoff, J.). A special verdict form resolves this problem now rather than at sentencing.

The proposed special verdict questions for Counts Two and Three are as follows:

**Special Verdict Question No. 1:** Do you unanimously find, beyond a reasonable doubt, that Mr. Heppner engaged in a scheme to defraud **GWG Holdings, Inc.**?

☐ Yes    ☐ No

**Special Verdict Question No. 2:** Do you unanimously find, beyond a reasonable doubt, that Mr. Heppner engaged in a scheme to defraud **prospective investors in Beneficient**?

☐ Yes    ☐ No

The Court should further instruct the jury that it must be unanimous as to which specific theory supports any guilty verdict on Counts Two and Three.

23

## CONCLUSION

For the reasons set forth above, Mr. Heppner respectfully requests that the Court grant his Omnibus Motion *in Limine*.

Respectfully submitted,

Dated: April 7, 2026

/s/ *Benjamin A. O'Neil*
Benjamin A. O'Neil
Robert Zink
John ("Fritz") Scanlon
QUINN    EMANUEL    URQUHART    &
SULLIVAN, LLP
555 13th Street NW, Suite 600
Washington, DC 20005
(202) 538-8151
benoneil@quinnemanuel.com
robertzink@quinnemanuel.com
fritzscanlon@quinnemanuel.com

Christopher J. Clore
QUINN    EMANUEL    URQUHART    &
SULLIVAN, LLP
295 5th Avenue, 9th Floor
New York, NY 10016
(212) 849-7000
christopherclore@quinnemanuel.com

*Counsel for Defendant Bradley Heppner*

24