UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>BRADLEY HEPPNER,<br><br>              Defendant. | No. 1:25-CR-00503 |

## **DEFENDANT'S OPPOSITION TO THE GOVERNMENT'S MOTION *IN LIMINE***

Benjamin A. O'Neil
Robert Zink
John ("Fritz") Scanlon
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
555 13th Street NW, Suite 600
Washington, DC 20005
(202) 538-8151
benoneil@quinnemanuel.com
robertzink@quinnemanuel.com
fritzscanlon@quinnemanuel.com

Christopher J. Clore
295 5th Avenue, 9th Floor
New York, NY 10016
(212) 849-7000
christopherclore@quinnemanuel.com

*Counsel for Defendant Bradley Heppner*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

LEGAL STANDARD FOR MOTIONS IN LIMINE ..................................................................1

ARGUMENT ..............................................................................................................................2

I.     THE COURT SHOULD DENY THE GOVERNMENT'S REQUEST TO
ADMIT UNCHARGED, OTHER-ACT EVIDENCE REGARDING MR.
HEPPNER'S ALLEGED (1) MISREPRESENTATIONS TO PAUL CAPITAL
IN 2015 AND (2) PERSONAL SPENDING AND COMPENSATION ............................2

     A.     Legal Standard for Admissibility of Uncharged, Other-Act Evidence ....................2

     B.     Argument...................................................................................................................4

          1.     The Court Should Deny the Government's Request to Admit
Evidence of Uncharged, Alleged Misrepresentations Made to Paul
Capital in 2015 .....................................................................................................4

          2.     The Court Should Deny the Government's Request to Admit
Evidence of Mr. Heppner's Personal Spending and Compensation. ...........6

II.     THE COURT SHOULD DENY THE GOVERNMENT'S REQUEST TO
ADMIT STATEMENTS MADE BY (1) BENEFICIENT'S AND GWG'S
EMPLOYEES AND AGENTS, AND (2) MR. HEPPNER'S ALLEGED CO-
CONSPIRATORS...................................................................................................................7

     A.     Legal Standard for Admissibility of Out-of-Court Statements by Alleged
Employees and Agents.............................................................................................7

     B.     Legal Standard for Admissibility of Out-of-Court Statements by Alleged
Co-Conspirators ......................................................................................................9

     C.     Argument................................................................................................................10

III.     THE COURT SHOULD DENY THE GOVERNMENT'S REQUEST TO
ADMIT BOARD MINUTES AS BUSINESS RECORDS .................................................14

     A.     Legal Standard for Admissibility of Business Records...........................................14

     B.     Argument................................................................................................................16

IV.     THE COURT SHOULD DENY THE GOVERNMENT'S REQUEST TO
EXCLUDE MR. HEPPNER'S SUMMARY WITNESS .....................................................17

V.     THE COURT SHOULD DENY THE GOVERNMENT'S REQUEST TO
EXCLUDE SEVERAL TYPES OF EVIDENCE THAT ARE RELEVANT AND
ADMISSIBLE ......................................................................................................................18

     A.     Legal Standard Governing Relevance.....................................................................18

     B.     The Court Should Deny the Government's Request to Exclude Evidence
Regarding Action or Inaction by GWG Special Committee Members .................19

C.     The Court Should Deny the Government's Request to Exclude Evidence that Mr. Heppner Believed Beneficient Would Be Successful ...............................20

D.     The Court Should Deny the Government's Request to Exclude Evidence that the HCLP Loan Was Real and that HCLP Was Entitled to Repayment .........21

E.     The Court Should Deny the Government's Request to Exclude Evidence that Attorneys Were Involved in the Transactions that the Government Contends Were Fraudulent ......................................................................................22

F.     The Court Should Deny the Government's Request to Exclude Evidence that GWG's Bankruptcy Was Caused by Actions Taken by the SEC ...................22

G.     The Court Should Deny the Government's Request to Exclude Evidence and Argument About the SEC's Decision Not to Bring an Enforcement Proceeding .............................................................................................................24

H.     The Court Should Deny the Government's Request to Exclude Evidence of Mr. Heppner's Background and Personal Circumstances .................................25

VI.    THE COURT SHOULD DENY THE GOVERNMENT'S REQUEST TO PREVENT MR. HEPPNER FROM CROSS-EXAMINING WITNESSES ABOUT SEVERAL CIVIL ACTIONS RELATING TO GWG AND BENEFICIENT ............................................................................................................26

A.     Legal Standard for Cross-Examination ......................................................26

B.     Argument ...........................................................................................................27

CONCLUSION ...........................................................................................................................30

## TABLE OF AUTHORITIES

**Page**

### Cases

*Abascal v. Fleckenstein*,
   820 F.3d 561 (2d Cir. 2016) ...............................................................................14

*Baxter Diagnostics, Inc. v. Novatek Medical, Inc.*,
   1998 WL 665138 (S.D.N.Y. Sept. 25, 1998) ........................................................2, 5

*Bourjaily v. United States*,
   483 U.S. 171 (1987) ............................................................................................9

*Brinson v. Walker*,
   547 F.3d 387 ..............................................................................................26, 27

*Colo. Ctr. for Healing Touch v. Healing Touch Int'l*,
   2017 WL 11550572 (D. Colo. Jan. 3, 2017)................................................................16

*Davis v. Alaska*,
   415 U.S. 308 (1974) ...........................................................................................26

*Delaware v. Van Arsdall*,
   475 U.S. 673 (1986) ...........................................................................................26

*Greene v. McElroy*,
   360 U.S. 474 (1959) ......................................................................................26, 27

*Highland Capital Mgmt., L.P. v. Schneider*,
   551 F. Supp. 2d 173 (S.D.N.Y. 2008) .....................................................................1

*Hynix v. Semiconductor, Inc. v. Rambus, Inc.*,
   2008 WL 2951341 (N.D. Cal. July 24, 2008) ...........................................................15

*Leser v. U.S. Bank Nat'l Ass'n*,
   2012 WL 6738402 (E.D.N.Y. Dec. 29, 2012)............................................................7

*Luce v. United States*,
   469 U.S. 38 (1984) ..............................................................................................1

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co. Group*,
   937 F. Supp. 276 (S.D.N.Y. 1996).........................................................................2, 5

*Palmieri v. Defaria*,
   88 F.3d 136 (2d Cir. 1996).....................................................................................1

*Pappas v. Middle Earth Condominium Ass'n*,
   963 F.2d 534 (2d Cir. 1992) ..................................................................................7

*Park West Radiology v. CareCore Nat'l LLC*,
   675 F. Supp. 2d 314 (S.D.N.Y. 2009) ...................................................................5

*Pennsylvania v. Ritchie*,
   480 U.S. 39 (1987) (plurality opinion)................................................................26

*Polskie Linie Lotnicze Lot S.A. v. Boeing Co.*,
   2025 WL 1645172 (W.D. Wash. May 23, 2025) .................................................28

*United States v. Abel*,
   469 U.S. 45 (1984) ...............................................................................................26

*United States v. Abu–Jihaad*,
   630 F.3d 102 (2d Cir.2010) ..................................................................................18

*United States v. Aguirre-Parra*,
   763 F. Supp. 1208 (S.D.N.Y. 1991) ......................................................................9

*United States v. Babajian*,
   2009 WL 412333 (C.D. Cal. Feb. 17, 2009) ........................................................19

*United States v. Bankman-Fried*,
   2023 WL 6283509 (S.D.N.Y. Sept. 26, 2023) ........................................... *passim*

*United States v. Benchick*,
   2014 WL 4181970 (E.D. Mich. Aug. 21, 2014)....................................................20

*United States v. Brand*,
   467 F.3d 179 (2d Cir. 2006) ..................................................................................3

*United States v. Certified Envt'l Servs., Inc.*,
   753 F.3d 72 (2d Cir.2014)....................................................................................18

*United States v. Cruz*,
   894 F.2d 41 (2d Cir. 1990)...................................................................................16

*United States v. Curley*,
   639 F.3d 50 (2d Cir. 2011)....................................................................................3

*United States v. Freedman*,
   2019 WL 5387866 (S.D.N.Y. Oct. 22, 2019)............................................. 9, 12, 13

*United States v. Glover*,
   2025 WL 1580848 (S.D.N.Y. June 2, 2025) ............................................. 10, 11, 12

*United States v. Gordon*,
987 F.2d 902 (2d Cir. 1993) ....................................................................................3

*United States v. Guo*,
2024 WL 1939221 (S.D.N.Y. May 2, 2024) ....................................................... *passim*

*United States v. Gupta*,
747 F.3d 111 (2d Cir. 2014) ..................................................................................10

*United States v. Hatfield*,
685 F. Supp. 2d 320 (E.D.N.Y. 2010).......................................................................6

*United States v. Hoskins*,
44 F.4th 140 (2d Cir. 2022) .....................................................................................8

*United States v. James*,
607 F. Supp. 3d 246 (E.D.N.Y. June 10, 2022)....................................................2, 3

*United States v. Johnson*,
469 F. Supp. 3d 193 (S.D.N.Y. 2019).................................................................2, 28

*United States v. June*,
2012 WL 245243 (D. Mass. Jan. 25, 2012) .............................................................20

*United States v. Kaiser*,
609 F.3d 556 (2d Cir. 2010) ...................................................................................15

*United States v. Kassir*,
2009 WL 976821 (S.D.N.Y. Apr. 9, 2009) ........................................................2, 3, 4

*United States v. Kistner*,
2013 WL 80255 (S.D. Ohio Jan. 7, 2013) ...............................................................19

*United States v. Litvak*,
889 F.3d 56 (2d Cir. 2018)......................................................................................19

*United States v. Martoma*,
2014 WL 31191 (S.D.N.Y. Jan. 6, 2014)............................................................2, 3, 4

*United States v. O'Sullivan*,
2021 WL 1979074 (S.D.N.Y. May 18, 2021) ............................................................5

*United States v. Ozsusamlar*,
428 F. Supp. 2d 161 (S.D.N.Y. 2006).......................................................................2

*United States v. Quattrone*,
441 F.3d 153 (2d Cir. 2006) .....................................................................................6

*United States v. Rioux*,
  97 F.3d 648 (2d Cir. 1996)..................................................................................7

*United States v. Stein*,
  521 F. Supp. 2d 266 (S.D.N.Y.2007) ...................................................................2

*United States v. Holmes*,
  2021 WL 2044470 (N.D. Cal. May 22, 2021).................................................8, 11

*United States v. Tracy*,
  12 F.3d 1186 (2d Cir. 1993) ..........................................................................9, 12

*United States v. Tsoa*,
  2013 WL 6145664 (E.D. Va. Nov. 20, 2013).   ....................................................17

*United States v. White*,
  692 F.3d 235 (2d Cir.2012) ................................................................................18

*Villaroman v. United States*,
  184 F.2d 261 (D.C. Cir. 1950)............................................................................28

*Zaken v. Boerer*,
  964 F.2d 1319 (2d Cir. 1992) ......................................................................7, 8, 11

## Other Authorities

Fed. R. Evid. 401 ....................................................................................................18

Fed. R. Evid. 402 ....................................................................................................18

Fed. R. Evid. 801(d)(2)(D)............................................................................. *passim*

Fed. R. Evid. 1006 .............................................................................................17, 18

Fed. R. Evid. 805 ..............................................................................................15, 16

Fed. R. Civ. P. 16(a)(1)(G) ......................................................................................17

Fed. R. Civ. P. 403..................................................................................................3

Fed. R. Civ. P. 404(b)........................................................................................3, 4, 5

Fed. R. Civ. P. 801(d)(2)(D) ..............................................................................9, 10

Fed. R. Civ. P. 801(d)(2)(E)...................................................................... 9, 10, 12, 13

Fed. R. Civ. P. 803(6)...................................................................................... 14, 15, 16

Fed. R. Civ. P. 1006..........................................................................................................18

Fed. R. Civ. P. 1006(c).....................................................................................................18

2 McCormick on Evidence (9th ed. 2026) § 289, p ....................................................14

**PRELIMINARY STATEMENT**

The Government's motion *in limine* seeks sweeping rulings that (a) several vast categories of allegedly inculpatory evidence should be admitted before a single word is spoken at opening, and (b) several equally vast categories of exculpatory evidence should be definitively excluded from trial. Not only is the Government wrong on the law, but the Government's sprawling requests run counter to the purpose of a motion *in limine*. As this Court has recognized in its Individual Rules of Practice, motions *in limine* should be limited to matters on which pre-trial rulings are critical. The Government's attempt to resolve numerous, sweeping evidentiary issues before the Court has the benefit of seeing any argument or evidence from either side should be denied. Indeed, the Government's motion appears aimed at forcing Mr. Heppner to reveal his defense strategy—by compelling him to explain the relevance of several broad categories of evidence the Government seeks to admit and exclude—rather than streamlining this case for trial by focusing only on critical matters. The Court should accordingly deny the Government's motion *in limine* and rule on individual pieces of evidence as they are offered at trial.

**LEGAL STANDARD FOR MOTIONS IN LIMINE**

"A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176–77 (S.D.N.Y. 2008) (citing *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)). "The purpose of an in limine motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (quotation omitted). "Motions in limine are not a matter of right and should be largely limited to critical matters on which pre-trial rulings are critical." Jed S. Rakoff, Individual Rules of Practice, Rule 9 (Eff. June 3, 2024). Courts considering a "sweeping" motion *in limine* may

reserve judgment until trial, so that the motion is placed in the appropriate factual context. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co. Grp.*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996) (deferring decision on an *in limine* motion that was "too sweeping in scope"); *Baxter Diagnostics, Inc. v. Novatek Med., Inc.,* 1998 WL 665138, at *3 (S.D.N.Y. Sept. 25, 1998) (denying motions *in limine* and "reserv[ing] judgment on the motion until trial" to preclude presentation of evidence regarding the party's financial condition a potential punitive damages claim because the motion were too sweeping in scope to be considered prior to trial).  And a court should not grant a motion *in limine* seeking to exclude evidence unless the court determines that the evidence  is "clearly inadmissible on all potential grounds." *United States v. Ozsusamlar*, 428 F. Supp. 2d 161, 164-65 (S.D.N.Y. 2006) (citation omitted).

## ARGUMENT

**I.    THE COURT SHOULD DENY THE GOVERNMENT'S REQUEST TO ADMIT UNCHARGED, OTHER-ACT EVIDENCE REGARDING MR. HEPPNER'S ALLEGED (1) MISREPRESENTATIONS TO PAUL CAPITAL IN 2015 AND (2) PERSONAL SPENDING AND COMPENSATION**

### A.    Legal Standard for Admissibility of Uncharged, Other-Act Evidence

"Courts within the Second Circuit "typically 'employ a narrow construction' in considering whether other acts constitute direct evidence." *United States v. James*, 607 F. Supp. 3d 246, 253 (E.D.N.Y. June 10, 2022) (quoting *United States v. Johnson*, 469 F. Supp. 3d 193, 204–05 (S.D.N.Y. 2019)).  Evidence does not meet this standard simply because it "provides context or is relevant to the charged conduct." *United States v. Kassir*, 2009 WL 976821, at *2 (S.D.N.Y. Apr. 9, 2009).  "In deciding whether uncharged conduct is 'inextricably intertwined' with charged conduct—and thus admissible as direct evidence—courts have considered whether '[the] details of the uncharged transaction are necessary to understand the charged transaction.'" *United States v. Martoma*, 2014 WL 31191, at *3 (S.D.N.Y. Jan. 6, 2014) (quoting *United States v. Stein,* 521

2

F. Supp. 2d 266, 271 (S.D.N.Y.2007)) (alterations in original).  "Courts have not found charged and uncharged conduct inextricably intertwined where "'[t]he charged crimes are straightforward and may be fully understood without reference to [the uncharged conduct].'"  *Id.*

Therefore, "numerous courts in this circuit [have] found it necessary to conduct a Rule 404(b) analysis of uncharged [conduct] that merely provided context or was somehow relevant to the charged conduct." *James*, 607 F. Supp. 3d at 253-54 (quoting *Kassir*, 2009 WL 976821, at *2).  Indeed, "the proper course is to proceed under Rule 404(b)," unless it is "manifestly clear that the evidence in question" is direct evidence).  *Martoma*, 2014 WL 31191, at *2.

Federal Rule of Evidence Rule 404(b) "governs the admissibility of evidence of prior or subsequent 'bad acts'—evidence of 'crimes, wrongs, or acts' other than those charged in the indictment.'" *United States v. Curley*, 639 F.3d 50, 56 (2d Cir. 2011) (citing Fed. R. Evid. 404(b)).  "The rule prohibits the admission of such evidence if it 'prove[s] the character of a person' to show his propensity to commit the charged act, but permits its admission for other purposes." *Id.*  Although the Rule permits such evidence to be offered for limited purposes—such as "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," Fed. R. Evid. 404(b)—admission for these purposes is not automatic.  The offering party must satisfy a four-part test: the evidence must be (1) offered for a proper purpose; (2) relevant to a disputed issue in the case; (3) of probative value that substantially outweighs the danger of unfair prejudice under Rule 403; and (4) accompanied by an appropriate limiting instruction if requested. *United States v. Brand*, 467 F.3d 179, 196 (2d Cir. 2006).  And even where a nominally permissible purpose is identified, the evidence must nevertheless be excluded if the prior acts are "not sufficiently similar to the conduct at issue." *United States v. Gordon*, 987 F.2d 902, 909 (2d Cir. 1993).

### B.    Argument

The Court should deny the Government's request for a pretrial order admitting all evidence of (1) alleged misrepresentations that Mr. Heppner and Jeffrey Hinkle (an unindicted, alleged co-conspirator) made to Paul Capital in 2015, and (b) Mr. Heppner's personal spending (both before and during the charged scheme), as well as his compensation from Beneficient.  (*See* ECF 44 ("Mot.") at 6-11).

### 1.    The Court Should Deny the Government's Request to Admit Evidence of Uncharged, Alleged Misrepresentations Made to Paul Capital in 2015

The Court should deny the Government's request to admit evidence of alleged misrepresentations that Mr. Heppner and Mr. Hinkle made to Paul Capital in 2015 because such material is (a) not direct evidence of the crimes charged, which post-date the alleged 2015 Paul Capital misrepresentation by three years, and (b) is not permissible under Federal Rule of Evidence 404(b), and instead constitutes inadmissible propensity evidence.  At the very least, the Court should defer ruling on the sweeping request until trial.

First, the Government is incorrect in arguing that the alleged misrepresentations to Paul Capital in 2015 are direct evidence of the crimes charged.  (Mot. at 7-9).  The purported Paul-Capital misrepresentations occurred three years before the charged scheme allegedly began, and Paul Capital is not listed as a victim or target of the charged scheme anywhere in the Indictment.  (*See generally* ECF 3).  The Government's contention that such evidence provides "necessary context" and "proof of how the illegal relationship and mutual trust developed between Hinkle and the defendant" does not change the calculus.  (Mot. at 7-9).  As courts in this Circuit have repeatedly concluded, material does not become direct evidence "simply because it provides context or is relevant to the charged conduct." *Kassir*, 2009 WL 976821, at *2 (quotation omitted).  And the evidence is not inextricably intertwined with the charged conduct because the charged

4

crimes "may be fully understood without reference to" the uncharged conduct involving Paul Capital in 2015. *See Martoma*, 2014 WL 31191, at *3 (quotations omitted). Indeed, introduction of the alleged misrepresentations to Paul Capital in 2015 would have the opposite effect: potentially confusing the jury into thinking that Mr. Heppner may be convicted for making the alleged Paul-Capital misrepresentations.

Second, the Government is incorrect in arguing that evidence of alleged misrepresentations to Paul Capital in 2015 falls within one of the permissible uses under Rule 404(b). (Mot. at 8-9). The Government seeks to admit the evidence for one and only reason: to show Mr. Heppner's propensity. Indeed, the Government admits as much when it states that the probative value lies in the fact that Mr. Heppner allegedly "made materially similar false statements to Paul Capital." (*Id.* at 8). Such propensity evidence is particularly inappropriate here because it will undoubtedly lead to a mini-trial on an ancillary, uncharged matter. Courts in this Circuit have repeatedly excluded evidence that "would improperly turn the trial into a 'multi-ringed sideshow of mini-trials on collateral issues' that would cause confusion and undue delay." *United States v. O'Sullivan*, 2021 WL 1979074, at *12 (E.D.N.Y. May 18, 2021) (quoting *Park West Radiology v. CareCore Nat'l LLC*, 675 F. Supp. 2d 314, 325 (S.D.N.Y. 2009)). This Court should do the same.

Third, the Court should deny the Government's sweeping request to admit all evidence regarding alleged misrepresentations to Paul Capital in 2015, and instead defer ruling on it until trial. Such sweeping requests should be evaluated in the appropriate factual context, as it develops at trial, not prior to trial's commencement. *See Nat'l Union Fire Ins.*, 937 F. Supp. at 287; *Baxter Diagnostics,* 1998 WL 665138, at *3.

5

**2.    The Court Should Deny the Government's Request to Admit Evidence of Mr. Heppner's Personal Spending and Compensation.**

The Court should deny the Government's sweeping request to admit all evidence of Mr. Heppner's personal spending from both before and during the charged scheme, as well as Mr. Heppner's $2.8-million annual salary from Beneficient. (Mot. at 9-11). While certain of this evidence may be relevant in some instances, other portions are plainly irrelevant. The Court should accordingly defer ruling on the Government's sweeping request until trial.

First, the Government's blanket request to admit all evidence of Mr. Heppner's personal spending both before and during the charged conspiracy sweeps far too wide. (Mot. at 9-11). As numerous courts have noted, evidence of lavish spending alone is not probative of intent. *See, e.g.*, *United States v. Hatfield*, 685 F. Supp. 2d 320, 326 (E.D.N.Y. 2010) (excluding evidence of lavish lifestyle and observing that "it is irrelevant if Mr. Brooks spent his fortune on lavish parties, instead of donating it to starving Malawian orphans"). Even in the cases cited by the Government where evidence of personal spending or compensation was admitted, the courts imposed strict limits on its use. *See, e.g.*, *United States v. Quattrone*, 441 F.3d 153, 187 (2d Cir. 2006) (noting that "evidence of compensation, wealth, or lack thereof can unduly prejudice jury deliberations" and therefore, if such evidence is admitted, "other safeguards are employed such as limiting instructions or restrictions confining the government's references to that wealth"). Here, the Court cannot decide what evidence of Mr. Heppner's spending may be relevant or unfairly prejudicial because the Government has not provided any specific examples of what it intends to admit. The Court should accordingly defer ruling on the Government's request until the record is developed at trial and each piece of evidence may be evaluated.

Second, the Government's request to admit evidence of Mr. Heppner's $2.8-million annual salary should be flatly denied, and the evidence should be excluded. (Mot. at 10-11). The

6

Government does *not* seek to use such evidence to show that Mr. Heppner had a motive to commit fraud in order to preserve his continued receipt of this salary—as is the case in all the decisions cited by the Government. (*See* Mot. at 11 (citing cases)). Here, the government seeks to use evidence of Mr. Heppner's $2.8 million salary simply to show that, "while generous by all accounts, was insufficient to cover his personal expenses," which were paid with "money from HCLP." (Mot. at 10). In other words, the Government is trying to use Mr. Heppner's annual salary to show that he was highly paid but nevertheless beset by greed and profligacy. Such facts are inflammatory, alleged facts that are utterly irrelevant to proof of the charged crimes. The Government can seek to admit evidence that it believes shows money from HCLP being used for Mr. Heppner's personal expenses without any reference to Mr. Heppner's salary.

## II.    THE COURT SHOULD DENY THE GOVERNMENT'S REQUEST TO ADMIT STATEMENTS MADE BY (1) BENEFICIENT'S AND GWG'S EMPLOYEES AND AGENTS, AND (2) MR. HEPPNER'S ALLEGED CO-CONSPIRATORS

### A.    Legal Standard for Admissibility of Out-of-Court Statements by Alleged Employees and Agents

"Under Federal Rule of Evidence 801(d)(2)(D), a statement is not hearsay when made 'by the party's agent or servant concerning a matter within the scope of the agency or employment, [and] during the existence of the relationship." *United States v. Rioux*, 97 F.3d 648, 660 (2d Cir. 1996) (quoting Fed. R. Evid. 801(d)(2)(D)). To show that the statement is not hearsay, the Government must show: "'(1) the existence of the agency relationship, (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency." *Leser v. U.S. Bank Nat'l Ass'n*, 2012 WL 6738402, at *4 (E.D.N.Y. Dec. 29, 2012) (quoting *Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 537 (2d Cir. 1992)).

"[W]hen a statement made by one corporate employee to another is sought to be introduced against [another] corporate employee, instead of the corporation, admission under Rule

7

801(d)(2)(D) depends on the relationship between the declarant and the defendant." *Zaken v. Boerer*, 964 F.2d 1319, 1322 (2d Cir. 1992). The proponent of the statement must show that an agency relationship existed between the declarant and the party against whom the statement is being offered. *See id.* ("When the factors proving an agency relationship are present, the testimony should not be excluded simply because it is offered against a corporate employee rather than the company itself.").

Thus, for a criminal defendant who is a CEO or other high-ranking member of a company, courts do not automatically admit all statements of company employees, but rather examine the specific relationship between (a) the declarant and (b) the CEO or high-ranking employee—to determine whether a traditional agency relationship existed. *See id.* (finding statements were admissible only because trial court determined that the declarant "was directly responsible to" the CEO defendant); *United States v. Guo*, 2024 WL 1939221, at *3 (S.D.N.Y. May 2, 2024) (denying pretrial motion to admit statements of all employees and attorneys of the defendant's companies because the Government did not "offer[] any specific statements or any details about the purported agency and employment relationships"); *United States v. Bankman-Fried*, No. 22-CR-0673, 2023 WL 6283509, at *3 (S.D.N.Y. Sept. 26, 2023) (Admissibility "of statements by defendant's alleged co-conspirators and agents . . . and other unnamed employees . . . ultimately must turn on characteristics of the particular items of evidence and the purposes for which they are offered. Accordingly, the government's motion is denied"); *United States v. Holmes*, 2021 WL 2044470, at *57 (N.D. Cal. May 22, 2021) (observing that, "[u]nder general agency principles, Theranos employees were not Holmes's agents; they were Theranos' agents," and noting that "this Court is unaware of[] any case supporting the admission of the statements of hundreds of employees to a corporate CEO under Rule 801(d)(2)(D)")

8

The determination of whether an agency relationship existed requires a "fact-based inquiry applying common law principles of agency." *Holmes*, 2021 WL 2044470, at *57. An agency relationship "arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests or otherwise consents so to act." *United States v. Hoskins*, 44 F.4th 140, 149 (2d Cir. 2022) (quotation and citation omitted).

Courts routinely defer or deny pretrial motions by the government seeking to admit broad categories of statements of numerous corporate employees and agents under Rule 801(d)(2)(D), where the government has failed to provide "any specific statements or any details about the purported agency and employment relationships." *E.g.*, *Guo*, 2024 WL 1939221, at *3 (denying request to admit "statements made by *all* of the Defendant's agents and employees" because "Federal Rule of Evidence 801(d)(2)(D) cannot be applied in the abstract") (quotations omitted); *Bankman-Fried*, 2023 WL 6283509, at *3 (similar).

### B.    Legal Standard for Admissibility of Out-of-Court Statements by Alleged Co-Conspirators

"For a statement to be admissible pursuant to Rule 801(d)(2)(E), a court must find by a preponderance of the evidence that: (1) there was a conspiracy in existence; (2) the declarant and the defendant against whom the statement is offered were members of the conspiracy; and (3) the statement was made (a) in furtherance of the conspiracy and (b) during the course of the conspiracy." *United States v. Freedman*, 2019 WL 5387866, at *1 (S.D.N.Y. Oct. 22, 2019) (citing *United States v. Tracy*, 12 F.3d 1186, 1196 (2d Cir. 1993) and *Bourjaily v. United States*, 483 U.S. 171, 175 (1987)). Whether "statements the Government seeks to admit were made 'in furtherance' of the conspiracy will . . . depend on the scope of the conspiracy the Government proves, in addition to the statements' content and context." *Id.* at *2.

9

Given these fact-dependent analyses, "[t]he proper procedure is to determine the issues surrounding admissibility (the existence of the conspiracy, a particular defendant's role, whether the statements were made in furtherance of the conspiracy) during the trial, and, if necessary, outside the presence of the jury." *Id.* (quoting *United States v. Aguirre-Parra*, 763 F. Supp. 1208, 1217 (S.D.N.Y. 1991)).

Indeed, courts routinely deny pretrial motions filed by the Government that seek to admit unspecified statements from several alleged co-conspirators on a wide variety of unspecified topics, because "[a]dmissibility ultimately must turn on characteristics of the particular items of evidence and the purposes for which they are offered." *E.g.*, *Bankman-Fried*, 2023 WL 6283509, at *3 (denying pretrial motion to admit "statements by certain of defendant's alleged co-conspirators and agents" about "general categories" of information because Rules 801(d)(2)(D) and 801(d)(2)(E) "cannot be applied in the abstract"); *United States v. Glover*, 2025 WL 1580848, at *10-11 (S.D.N.Y. June 3, 2025) (denying pretrial motion to admit co-conspirator statements because "[t]he bases on which to admit testimony under Rule 801(d)(2)(E) cannot be applied in the abstract" and "[t]he Government's summaries of the testimony they expect to elicit do not include the 'circumstances surrounding the statement[s]' that I must consider in deciding whether to admit the statements under the Rule") (quoting *United States v. Gupta*, 747 F.3d 111, 123 (2d Cir. 2014)).

## C.    Argument

The Court should deny the Government's pretrial request to admit (a) any statements made by an employee or agent of Beneficient or GWG, including all lawyers retained by them, and (b) any statements made by Mr. Heppner's alleged co-conspirators, because the Government's motion is devoid of the evidence required to establish that Rules 801(d)(2)(D) and (E) apply. (*See* Mot. at 11-19). The motion does not specify the statements that the Government seeks to admit,

10

and it seeks sweeping pretrial rulings on broad categories of information from numerous, unspecified witnesses. In short, the motion must be denied because it does not provide the "characteristics of the particular items of evidence and the purposes for which they are offered" that this Court requires to evaluate their admissibility. *Bankman-Fried*, 2023 WL 6283509, at *3; *Guo*, 2024 WL 1939221, at *3; *see also Glover*, 2025 WL 1580848, at *10-11.

***Statements by Employees and Agents.*** The Government provides no evidence at all regarding the roles, responsibilities, and reporting requirements of the Beneficient and GWG employees whose statements the Government seeks to admit en masse under Rule 801(d)(2)(D). Instead, the Government simply relies on its assertion that they are all agents of Mr. Heppner because Mr. Heppner "was both Chairman of the Board and CEO of Beneficient" and, [f]rom in or about April 2019 through in or about June 2021, the defendant was also Chairman of the Board of GWG," where "the evidence at trial will establish that the defendant directed GWG's operations." (Mot. at 17). But Mr. Heppner's role as CEO or Chairman of the Board is not enough to establish an agency relationship with all of Beneficient's and GWG's employees for purposes of Rule 801(d)(2)(D). Under that Rule, the Government must establish that each individual employee had an agency relationship with Mr. Heppner himself, not just a job at Beneficient or GWG. *Zaken*, 964 F.2d at 1322; *Holmes*, 2021 WL 2044470, at *57. The Government has done no such thing.

In addition, the Government's promise to provide unspecified evidence at trial "that the defendant directed GWG's operations," (Mot. at 17), is utterly insufficient to satisfy the "fact-based inquiry" that the Court must apply to determine whether an agency relationship existed between the employees and Mr. Heppner. *Holmes*, 2021 WL 2044470, at *57 (quoting *NLRB v. Friendly Cab Co., Inc.,* 512 F.3d 1090, 1096 (9th Cir. 2008); *Guo*, 2024 WL 1939221, at *3

11

(denying government's "request to admit for their truth statements made by all of the Defendants' agents and employees," where the government failed to "offer[] any specific statements or any details about the purported agency and employment relationships") (internal quotations omitted).

And finally, the Government has failed to provide the specific employee statements themselves and the circumstances surrounding them, thus depriving Mr. Heppner and the Court of any ability to evaluate the "characteristics of the particular items of evidence and the purposes for which they are offered"—a determination that must be made before such evidence may be admitted under Rule 801(d)(2)(D). *See Bankman-Fried*, 2023 WL 6283509, at *3; *Guo*, 2024 WL 1939221, at *3; *see also Glover*, 2025 WL 1580848, at *10-11. The Government's sweeping request to admit statements of Beneficient's and GWG's employees must be denied.

For the same reasons, the Court must deny the Government's request to admit statements by lawyers who allegedly represented "GWG, Beneficient, and Heppner." (Mot. at 15). Not only has the Government failed to provide specific evidence of Mr. Heppner's agency relationship with the attorneys or scope thereof, but its very existence is in significant doubt. At an interview conducted on April 8, 2026, one of those attorneys informed the Prosecution Team that the law firm (Willkie Farr) had an "[e]ngagement with GWG and Ben; did not represent B Heppner personally." (April 8, 2026 email from A. Rothman ("Ex. A")). And, in any event, the Government has failed to provide the circumstances surrounding the attorney statements it wishes to admit, and therefore the request must be denied. *See Bankman-Fried*, 2023 WL 6283509, at *3; *Guo*, 2024 WL 1939221, at *3; *see also Glover*, 2025 WL 1580848, at *10-11.

***Statements by Alleged Co-Conspirators.*** Similar to its request to admit employee and agent statements, the Government's request to admit co-conspirator statements must be denied because it suffers from a fatal lack of foundation. The Government provides scant evidence

12

establishing the existence of any conspiracy, and virtually no evidence that CC-1, CC-2, and CC-3 were members of it. (Mot. at 13-16). Indeed, the Government does not even mention CC-1, CC-2, or CC-3 when it summarizes the expected testimony from cooperating witnesses Mr. Hinkle and Mr. Martens. (Mot. at 2). This omission is all the more glaring, given that the overwhelming majority of co-conspirator statements the Government seeks to admit (from the "representative examples" it lists on page 14-15 of its Motion) are statements made by CC-1, CC-2, or CC-3. (Mot. at 14-15). Instead of offering evidence that a conspiracy existed and that CC-1, CC-2, and CC-3 were members of it, the Government simply treats its own allegations as proof. Such assertions are insufficient to meet Rule 801(d)(2)(E)'s requirement to prove "by a preponderance of the evidence that: (1) there was a conspiracy in existence; [and] (2) the declarant and the defendant against whom the statement is offered were members of the conspiracy." *Freedman*, 2019 WL 5387866, at *1 (citing *Tracy*, 12 F.3d at 1196).

In addition, the Government's motion does not provide all the alleged co-conspirator statements the Government intends to admit at trial (only excerpts and summaries of certain alleged "representative examples"), nor does it set forth how each statements was "in furtherance of the conspiracy," as it is required to prove by a preponderance of the evidence. *Freedman*, 2019 WL 5387866, at *1. In short, the Government has failed to articulate and prove by a preponderance of the evidence the relevant "characteristics of the particular items of evidence" it seeks to admit or "the purposes for which they are offered." *Bankman-Fried*, 2023 WL 6283509, at *3. The Government's pretrial request to admit co-conspirator statements must accordingly be denied because Rule 801(d)(2)(E) "cannot be applied in the abstract." *Id.*

*        *        *

The Government's sweeping request for pretrial admission of unspecified statements on a wide array of topics and from numerous alleged employees, agents, and co-conspirators resembles

13

the request that the court considered and denied in *United States v. Bankman-Fried*. There, as here, the Government sought to admit "statements by certain of defendant's alleged co-conspirators and agents, including [CC-1, CC-2, CC-3, and CC-4], and other unnamed employees of" companies where the defendant served as CEO. *Id.* There, as here, the Government sought to admit "general categories of out-of-court statements as well as excerpted out-of-court statements . . . of which the Court has been provided only with portions." *Id.* And there, as here, the Government failed to provide the "characteristics of the particular items of evidence and the purposes for which they are offered." *Id.* This Court should similarly deny the Government's improper request.

## III. THE COURT SHOULD DENY THE GOVERNMENT'S REQUEST TO ADMIT BOARD MINUTES AS BUSINESS RECORDS

The Government moves to "admit minutes of certain meetings of the Boards of Beneficient, GWG, and the GWG Special Committees." (Mot. at 19). The Government contends these documents "are admissible as business records under Rule 803(6)." *Id.* The government also acknowledges that certain of these documents may "contain embedded hearsay." *Id*.

### A. Legal Standard for Admissibility of Business Records

For a document to be admissible as a business record under Rule 803(6) of the Federal Rules of Evidence, the document must: (a) be "made at or near the time by — or from information transmitted by — someone with knowledge"; (b) be "kept in the course of a regularly conducted business activity of a business"; (c) have been created as "a regular practice of that activity"; and (d) the defense does not otherwise establish that "the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6).

1.  Timeliness Requirement—"At or Near the Time"

14

With respect to the first requirement that the document be "made at or near the time by — or from information transmitted by — someone with knowledge," the Second Circuit has made clear: "Timeliness is essential because any trustworthy habit of making regular business records will ordinarily involve the making of the record *contemporaneously*." *Abascal v. Fleckenstein*, 820 F.3d 561, 565 (2d Cir. 2016) (internal citations and quotations omitted) (finding report at issue was not a business record because "[a] six month delay is too long a time to be considered a contemporaneous recording" and the document at issue in that case was generated six months after the underlying event) (emphasis in original); *see also* 2 MCCORMICK ON EVIDENCE (9th ed. 2026) § 289 ("Whether an entry made subsequent to the transaction has been made within a sufficient time to render it within the exception depends upon whether the time span between the transaction and the entry was so great as to suggest a danger of inaccuracy by lapse of memory.").

### 2.    Trustworthiness Requirement

Even if the foundational requirements of Rule 803(6) are satisfied, Rule 803(6) precludes admission of the document if the defense can demonstrate "the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6)(E); *see In re Lyondell Chem. Co.*, 2016 WL 6108526, at *2 (Bankr. S.D.N.Y. Oct. 19, 2016) ( "The party offering the document into evidence must provide a custodial witness to prove all of the conditions required by Rule 803(6) . . . . [T]he party objecting to admission of the documents may show that despite satisfaction of the other elements, the [documents] indicate a lack of trustworthiness [and are therefore inadmissible]." ) (internal quotations omitted).  Indeed, the "purpose of the rule is to ensure that documents were not created for personal purposes or in anticipation of litigation so that the creator of the document had no motive to falsify the record in question." *United States v. Kaiser*, 609 F.3d 556, 574 (2d Cir. 2010) (internal quotations and citations omitted).

Courts have refused to admit minutes of board meetings under Rule 803(6) where the minutes "appeared untrustworthy." *See, e.g., Hynix v. Semiconductor, Inc. v. Rambus, Inc.*, 2008 WL 2951341, at \*10 n.5 (N.D. Cal. July 24, 2008) ("On reconsideration, the court agreed with [plaintiffs] and determined that the proffered board minutes appeared untrustworthy and could not qualify as business records.").

### 3.    Hearsay Within Hearsay—FRE 805

Under Rule 805 of the Federal Rules of Evidence, "[h]earsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the [hearsay] rule." Fed. R. Evid. 805. In the context of board minutes, hearsay within hearsay problems become more acute because minutes of business meetings, even if business records under Rule 803(6) as a threshold matter, may nevertheless contain one or more embedded hearsay statements that are inadmissible. As one district court has stated:

> "[A]s to the alleged hearsay statement contained in board minutes, the Court directs the parties to Fed. R. Evid. 805 ('Hearsay Within Hearsay'), which states that a statement containing hearsay within hearsay is admissible only if each part of the statement falls within an exception to the hearsay rule. If Defendant plans to offer statements made at board meetings for the truth of the matter asserted, an additional exception to the hearsay rule must apply."

*Colo. Ctr. for Healing Touch v. Healing Touch Int'l*, 2017 WL 11550572, at \*3 (D. Colo. Jan. 3, 2017); *see also United States v. Cruz*, 894 F.2d 41, 44 (2d Cir. 1990) (noting that multiple hearsay statements in a record were not admissible absent "showing that they fit within the hearsay within hearsay exception").

### B.    Argument

Any pre-trial ruling on these materials, the defense respectfully submits, is premature. The Court should defer ruling on the admission of any of these records until and unless the Government can lay the appropriate foundation for their admission.

16

The defense flags for the Court that it expects that many of the board meeting minutes will ultimately be inadmissible because (a) they were not created "at or near the time" of the underlying event/meeting, (b) the source and circumstances surrounding their creation "indicate a lack of trustworthiness," which the defense will demonstrate at trial, and/or (c) the minutes otherwise contain inadmissible hearsay within hearsay. *See* Fed. R. Evid. 803(6).

## IV.     THE COURT SHOULD DENY THE GOVERNMENT'S REQUEST TO EXCLUDE MR. HEPPNER'S SUMMARY WITNESS

The Government argues that the defense's summary witness, Mr. Petron, "should be precluded from offering any expert testimony . . . or making use of the complex general ledgers the defense has marked as trial exhibits." (Mot. at 23). The Government further argues that "[t]o the extent the defendant seeks to offer summary testimony from Mr. Petron instead, the defense should be required to make a factual proffer of the scope of his testimony well in advance of trial to allow for the Government to seek to preclude this testimony if it exceeds the permissible bounds of such testimony." *Id*.

First, the defense intends to call a witness, Mr. Petron, to provide summary testimony pursuant to Federal Rule of Evidence 1006. Under Rule 1006, summary charts and testimony are admissible as substantive evidence if: "(1) the summarized material [is] voluminous and not conveniently subject to examination in court; (2) the summary chart [is] an accurate compilation of the voluminous records; (3) the records summarized must be otherwise admissible into evidence; and (4) the underlying documents must be made available to the opposing party for examination and copying." *United States v. Tsoa*, 2013 WL 6145664, at *4 (E.D. Va. Nov. 20, 2013). The defense will lay the proper foundation for Mr. Petron's testimony at trial.

Second, the Government, in its expert notice to the defense, noted that it intended to call an FBI Analyst, Ms. Lynch, to "testify to the accuracy of exhibits and summary charts prepared

17

for trial." The Government correctly noted that "Rule 16(a)(1)(G) does not require expert disclosures for summary witnesses such as Ms. Lynch." That the Government now seeks the Court to compel the defense to provide advance disclosure of the "scope" of Mr. Petron's summary testimony is ironic given that the Government both (a) acknowledges there is no advance disclosure required for FRE 1006 witnesses and (b) has failed to provide any substantive advance disclosure for Ms. Lynch, the government's own FRE 1006 witness.

Third, the defense has not requested "a factual proffer [regarding] the scope of [Ms. Lynch's] testimony," (Mot. at 23), because, assuming (a) Ms. Lynch does not provide expert testimony, (b) the proper foundation for Ms. Lynch's testimony is laid under Rule 1006, and (c) Ms. Lynch's testimony is otherwise relevant and admissible, any such request would be baseless.

In the end, it certainly appears that the Government simply seeks to obtain advance notice of Mr. Petron's testimony so that it can prepare for his cross-examination, especially considering (a) advance disclosure for FRE 1006 witnesses is not required by law (by the Government's own admission) and (b) the Government itself has failed to provide any advance notice regarding the substance of the testimony it intends to offer into evidence for its Rule 1006 witness. The Government's motion on this issue is frivolous and should be denied.

## V.    THE COURT SHOULD DENY THE GOVERNMENT'S REQUEST TO EXCLUDE SEVERAL TYPES OF EVIDENCE THAT ARE RELEVANT AND ADMISSIBLE

### A.    Legal Standard Governing Relevance

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "To be relevant, evidence need not be sufficient by itself to prove a fact in issue, much less to prove it beyond a reasonable doubt." *United States v. Abu–Jihaad,* 630 F.3d 102, 132 (2d Cir.2010); *see also United States v. Certified Envt'l Servs., Inc.,* 753 F.3d 72,

18

90 (2d Cir.2014) ("[T]he definition of relevance under Fed. R. Evid. 401 is very broad."); *United States v. White,* 692 F.3d 235, 246 (2d Cir.2012) (explaining that Rule 401 prescribes a "very low standard" (internal quotation marks omitted)). "[U]nless an exception applies, all 'relevant evidence is admissible.'" *White,* 692 F.3d at 246 (quoting Fed. R. Evid. 402) (cleaned up).

**B.      The Court Should Deny the Government's Request to Exclude Evidence Regarding Action or Inaction by GWG Special Committee Members**

The Court should deny the Government's request to exclude all evidence and argument tending to show that members of GWG's special committee "were negligent, insufficiently vigilant," or failed to perform "adequate diligence." (Mot. at 24-26). Such evidence is critically relevant to, among other things, whether Mr. Heppner's alleged misrepresentations were material.

Courts in this district and elsewhere have specifically recognized that evidence of alleged victims' actions or inactions in response to alleged misrepresentations is relevant to materiality, and they have therefore allowed defendants to admit it. *See, e.g., Guo*, 2024 WL 1939221, at *8 (not prohibiting Defendants from questioning witnesses about (1) "evidence of the level of sophistication of investors (including the due diligence they conducted) is relevant to the materiality of the alleged misstatements," and (2) "what alleged victims knew or understood about [the defendants] is relevant to the total mix of information available to the person"); *United States v. Kistner*, 2013 WL 80255, at *7-8 (S.D. Ohio Jan. 7, 2013) (holding that the "the actions or inactions of the various [victims] could be probative of the issue of materiality"); *United States v. Babajian*, 2009 WL 412333, at *5 (C.D. Cal. Feb. 17, 2009) (same). In *Guo*, the court specifically recognized that evidence of the actions or inactions of an alleged victim may be relevant to materiality because "the 'reasonable investor' is an objective standard and may vary 'with the nature of the traders involved in the particular market.'" 2024 WL 1939221, at *8 (quoting *United States v. Litvak*, 889 F.3d 56, 65 (2d Cir. 2018). The Government's attempt to

19

exclude such evidence would thus deprive the jury of information that courts have recognized as central to the materiality inquiry.

The two cases that the Government cites to support its argument to exclude evidence of purported victims' actions or inactions are easily distinguishable. In both, the court found that evidence of alleged victims' action or inaction was irrelevant because the party seeking it was attempting to use it for blame-the-victim arguments. Moreover, defendants in both cases sought discovery orders, not pre-trial rulings. *See United States v. June*, 2012 WL 245243, at *2 (D. Mass. Jan. 25, 2012) (defendant "merely re-clothes the forbidden 'blame the victim' defense in a slightly different costume"); *United States v. Benchick*, 2014 WL 4181970, at *3 (E.D. Mich. Aug. 21, 2014) (defendant's "'blame-the-victim' approach fails" on a motion to compel posture). Mr. Heppner is doing nothing of the sort. He does not intend to argue that the alleged victims were gullible or negligent, as the Government is accusing. Mr. Heppner, instead, would use the evidence to show, among other things, that the alleged misrepresentations were not material. The Court should accordingly deny the Government's request to exclude the evidence.

### C. The Court Should Deny the Government's Request to Exclude Evidence that Mr. Heppner Believed Beneficient Would Be Successful

The Court should deny the Government's request to exclude all evidence and argument tending to show that (1) "Beneficient would have been incredibly profitable, more than making up for any losses due to HCLP payments; and (2) multiple valuation firms valued Beneficient in excess of $1 billion (and even more than $2 billion) and thus GWG was acquiring valuable securities when it" invested in Beneficient. (Mot. at 26-27). Evidence that Mr. Heppner believed that Beneficient was and would have been successful, even with the HCLP loan (and the associated payments) on its books is directly relevant to Mr. Heppner's good faith belief that Beneficient was

20

a viable business and not, as the Government has alleged, merely a vehicle for Mr. Heppner to defraud others. The same is true for evidence about Beneficient's value.

In arguing that such evidence is irrelevant, the Government does not cite to a single case where a court granted a motion *in limine* seeking to exclude evidence that a defendant believes his business was profitable and valuable. Rather, the Government cites several cases for the uncontroversial proposition that belief in ultimate profit does not excuse fraud to obtain money in the short term. (*See* Opp. at 26-27). That is not what Mr. Heppner intends to argue here. The request to exclude should accordingly be denied.

### D.    The Court Should Deny the Government's Request to Exclude Evidence that the HCLP Loan Was Real and that HCLP Was Entitled to Repayment

The Court should deny the Government's request to exclude all evidence and argument tending to show that HCLP "was entitled to the funds it received from Beneficient through documented credit agreements . . . ." (Mot. at 27-28). The legitimacy of the $141 million loan from HCLP to Beneficient will be one of the critical points of contention in this case. The notion that Mr. Heppner should be prevented from admitting evidence on the issue because "the loans on Beneficient's books were questionable at best" must be rejected out of hand. (Mot. at 27). Evidence at trial will show that the HCLP loan was legitimate, that HCLP was entitled to repayment of it, and that a portion of GWG's investments needed to be used to pay the loan down—a fact that GWG knew at the time.

Furthermore, the Government incorrectly characterizes Mr. Heppner's anticipated defense. Mr. Heppner does not intend to argue that he was entitled to make false or misleading statements to GWG because HCLP was owed a debt by a company in which GWG invested large sums of money. (Mot. at 27-28).

21

**E.    The Court Should Deny the Government's Request to Exclude Evidence that Attorneys Were Involved in the Transactions that the Government Contends Were Fraudulent**

The Court should deny the Government's request to exclude all evidence and argument regarding the presence of attorneys and its effect on whether Mr. Heppner had the intent to defraud. (Mot. at 28-30).  The Government itself readily acknowledges that "proof of the defendant's crimes necessarily requires the Government to offer evidence that involves the work of attorneys." (Mot. at 28).  The notion that Mr. Heppner would be precluded from offering evidence or argument that relates to the work of attorneys should be rejected.  Indeed, what an individual would know or how an individual would act based, at least in part, on his training and experience as a lawyer is relevant to determining whether Mr. Heppner defrauded anyone.

To the extent the Government believes evidence of attorney-involvement should be excluded because Mr. Heppner intends to put on an advice of counsel defense, the Government is wrong.  Mr. Heppner does not intend to put on an advice of counsel defense.

**F.    The Court Should Deny the Government's Request to Exclude Evidence that GWG's Bankruptcy Was Caused by Actions Taken by the SEC**

The Court should deny the Government's request to exclude all evidence and argument that GWG's bankruptcy was caused by actions taken by the SEC, rather than actions taken by Mr. Heppner.[1]  (Mot. at 30-32).  This evidence is directly relevant because the Government, not Mr. Heppner, has injected the bankruptcy issue into this case, and Mr. Heppner must be permitted to address the issue fully.

---

[1]    The Government has also moved to exclude all evidence that losses to GWG's bondholders were caused by actions taken by the Texas bankruptcy court, rather than Mr. Heppner's actions.  Mr. Heppner has moved to exclude any evidence about losses to GWG's bondholders, and, based on the Court's statements at the *Curcio* hearing on April 6, 2026, believes the Court is inclined to grant it.  If that motion is granted, Mr. Heppner does not intend to admit any evidence about actions taken by the Texas bankruptcy court.

At the April 6, 2026 *Curcio* hearing, the Government stated its continuing intention to offer evidence about GWG's bankruptcy and how it plans to do so:

> [I]n April of 2022, GWG files for Chapter 11 bankruptcy protection. A year before that, less than a year before that, the defendant separates himself personally by stepping off as chairman of the board of GWG.  That's important, because that's exactly around the time when the SEC is investigating his conduct. He's fabricated minutes that later are provided to the SEC. And so, in short, he understands the gig is up, right. The scheme has started to unravel, and he wants to get as far away from it as he can. So he resigns. Months later, beneficent separates from GWG and then GWG files for bankruptcy.
>
> The fact that that bankruptcy happened is relevant and probative of the defendant's intent at the time, meaning it makes it more likely that he understood problems would befall GWG if, in fact, problems do befall GWG in the form of a bankruptcy that happens six to eight months later.
>
> At the time of the bankruptcy, there are thousands of bondholders who have claims in that bankruptcy for their losses.

(April 6, 2026 Curcio Hearing Tr. at 6).  Any reasonable person who hears this evidence would conclude that Mr. Heppner's actions caused the bankruptcy.  This analysis is not changed by the Government's claim that it will not explicitly argue that Mr. Heppner's fraud caused the bankruptcy, (Mot. at 30), or the Government's nonsensical argument that events happening after the conspiracy allegedly ended are important to showing Mr. Heppner's intent during it.  The facts, as set forth above by the Government, will tell the following story:  Mr. Heppner allegedly committed several criminal acts, realized the gig is up, knew that bad things would happen to GWG, and then tried to run away while GWG spiraled into a bankruptcy caused by his alleged fraud.  Mr. Heppner must be able to rebut this misimpression by admitting evidence that the bankruptcy was caused by others—specifically the SEC, which took aggressive, *ultra vires* actions that put GWG out of business.

Finally, the Court cannot solve this problem by barring all evidence of GWG's bankruptcy. Mr. Heppner intends to admit evidence about the bankruptcy that is separate and apart from its

cause. Namely, Mr. Heppner intends to admit evidence and argument that certain Government witnesses had roles in the bankruptcy proceeding that created bases for bias against Mr. Heppner and motives to provide information that is unfairly inculpatory to Mr. Heppner, while being falsely exculpatory of themselves.

G.    **The Court Should Deny the Government's Request to Exclude Evidence and Argument About the SEC's Decision Not to Bring an Enforcement Proceeding**

The Court should deny the Government's request to exclude evidence and argument "about the SEC's decision not to bring an enforcement action against the defendant or his companies." (Mot. at 32-33). This evidence is directly relevant because the Government, not Mr. Heppner, has injected the SEC investigation (like the GWG Bankruptcy material) into this case, and Mr. Heppner must be permitted to address the issue fully.

Count Five of the Indictment charges Mr. Heppner with falsifying "[b]oard minutes from October 2019 and misled members of Beneficient's and GWG's Boards into approving those minutes as accurate, with the intent to impede, obstruct, and influence an investigation by the SEC." (ECF 3 ¶ 35). The Government will undoubtedly offer evidence about the existence of an SEC investigation, the SEC's request for the Board minutes in question, and the SEC's receipt and consideration of the allegedly falsified Board minutes. As with the evidence about GWG's bankruptcy, the evidence about the SEC investigation will leave the jury with the impression that Mr. Heppner's conduct resulted in an adverse action: here, an enforcement action by the SEC. Preventing Mr. Heppner from admitting evidence that the SEC took no enforcement action would allow the government to use the SEC investigation as a sword while taking away Mr. Heppner's shield. The Court should reject the Government's request to do that.

In addition, the Government's notes and memos of interviews with its SEC witness are replete with statements by the witness to the effect that the SEC was focused on and cared about

24

whether Mr. Heppner was a related party for purposes of determining whether GWG's financial statements contained misrepresentations—particularly, with regard to the allegedly falsified Board minutes. Such testimony clearly raises issues that Mr. Heppner must be able to rebut through cross-examination and admission of evidence about the SEC's decision not to bring an enforcement action.

The Court should accordingly deny the Government's request to exclude or, at the very least, defer ruling on the Government's request until trial, at which time the Court may evaluate the admissibility of the evidence in its proper context.

Finally, the cases and authorities cited by the Government are inapplicable. (*See* Mot. at 32-33). Those cases and authorities deal with the different and inapposite situation where a defendant is impugning the Prosecution Team's investigation or relying on prior acquittals on similar facts to argue that the defendant is innocent of the crimes charged. Here, Mr. Heppner seeks to admit evidence that is directly relevant to the facts underpinning Count Five.

### H.    The Court Should Deny the Government's Request to Exclude Evidence of Mr. Heppner's Background and Personal Circumstances

The Court should deny the Government's sweeping request to exclude all evidence concerning Mr. Heppner's background and personal circumstances. (Mot. at 34-36). Certain of the sub-categories of evidence that the Government seeks to exclude wholesale will almost certainly be discussed at trial. For example, Mr. Heppner's professional background and the fact that he sold a business for $150 million will almost certainly be discussed at trial. Indeed, the Government mentions this information in its motion *in limine*. (Mot. at 1, 9). In addition, the Government's exhibits reveal that it intends to admit evidence that Mr. Heppner was married, and that certain of his expenditures went to charitable giving. (*E.g.*, GX-901 ("Ex. B")). In addition, the notion that Mr. Heppner should be precluded from presenting evidence of any transactions

25

other than the specific transactions discussed in the Indictment should be rejected out of hand. (*See* Mot. at 35).  Mr. Heppner may introduce such evidence to put the Government's charged transactions in context.

Mr. Heppner does not intend to offer evidence of "prior good acts" to show that he did not commit the specific crimes charged, nor does he intend to introduce any evidence or argument regarding potential punishment.  However, many of the categories of evidence that the Government seeks to exclude in Sections V.G and V.H will undoubtedly come up at trial, and Mr. Heppner should be permitted to admit evidence related to them.  The Court should therefore either deny the Government's motion as moot or premature.

## VI.    THE COURT SHOULD DENY THE GOVERNMENT'S REQUEST TO PREVENT MR. HEPPNER FROM CROSS-EXAMINING WITNESSES ABOUT SEVERAL CIVIL ACTIONS RELATING TO GWG AND BENEFICIENT

### A.    Legal Standard for Cross-Examination

"It is a clearly established principle of Supreme Court jurisprudence that the Confrontation Clause requires that a criminal defendant be afforded a meaningful opportunity to cross-examine witnesses against him in order to show bias or improper motive for their testimony." *Brinson v. Walker*, 547 F.3d 387, 392 (2d Cir. 2008); *see* Pennsylvania v. Ritchie, 480 U.S. 39, 51, (1987) (plurality opinion) ("[T]he right to cross-examine includes the opportunity to show that a witness is biased, or that the testimony is exaggerated or unbelievable.") (*citing* United States v. Abel, 469 U.S. 45, 50 (1984)).  Indeed, the Supreme Court has declared that "the exposure of a witness's motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination.'" *Delaware v. Van Arsdall,* 475 U.S. 673, 678-79 (1986) ((quoting *Davis v. Alaska,* 415 U.S. 308, 316-17 (1974)).  And the Supreme Court has stated that "[c]ertain principles have remained relatively immutable in our jurisprudence," including the right of the accused to challenge "the testimony of individuals . . . who . . . might be

26

perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealousy." *Greene v. McElroy,* 360 U.S. 474, 496 (1959).

**B.     Argument**

The Court should deny the Government's request to prevent Mr. Heppner from cross-examining witnesses David Chavenson, Bruce Schnitzer, Jon Sabes, Evan Stone, and Sheldon Stein about various civil actions filed against them in connection with GWG and Beneficient. (Mot. at 36-40). Such a limitation would violate Mr. Heppner's "clearly established" right that he "be afforded a meaningful opportunity to cross-examine witnesses against him in order to show bias or improper motive for their testimony." *Brinson*, 547 F.3d at 392. The request must be denied.

Every civil lawsuit referenced in the Government's motion involves allegations of wrongdoing made by or against Stein, Chavenson, Schnitzer, Sabes, and Stone concerning events directly related to the conduct charged in this case. The existence of these civil actions provides a strong incentive for the defense witnesses to shade their testimony such that blame should be placed on Mr. Heppner and not them. Mr. Heppner must accordingly be able to use the existence of these civil actions to establish the defense witnesses's strong bias, prejudice, motivation to lie, vindictiveness, and/or jealousy. *See Greene,* 360 U.S. at 496.

For example, defense witness Sheldon Stein filed an arbitration against Beneficient arguing, among other things, that Stein "resigned his position as a director on October 10, 2019" after "several members of Beneficient's senior management team approached him to express concerns about the use of GWGH funds 'to pay Beneficient's related-party obligations rather than using them to build Beneficient's business'" (*Stein v. Beneficient,* No. 05-24-00914-CV, at 4 (Tex. App. Oct. 10, 2025)). As a result, "Beneficient notified [Stein] that his separation from the board of directors was for cause under the company's benefits plans and that his equity units were thereby

27

forfeited." (*Id.*). This arbitration, which resulted in a $36 million award in favor of Mr. Stein, provides a strong reason for Mr. Stein to (a) testify consistent with its allegations (which clearly affects his economic interests), (b) be prejudiced against Mr. Heppner (who was part of the Beneficient team that forfeited Stein's equity), and (c) have an improper motive to see Mr. Heppner punished. Mr. Heppner must be able to cross-examine Stein on the arbitration.

Indeed, courts regularly hold that litigants have a right to cross-examine witnesses about related civil actions that may be a basis for bias, especially if those litigations involve the witness's financial interest. *See, e.g.*, *Polskie Linie Lotnicze Lot S.A. v. Boeing Co.*, 2025 WL 1645172, at *2 (W.D. Wash. May 23, 2025) (allowing deposition questioning into an expert's potential bias based on financial interest in related litigation against the defendant); *Villaroman v. United States*, 184 F.2d 261, 261-62 (D.C. Cir. 1950) (reversing district court because it improperly refused to allow cross-examination into a "pending suit against appellant for $50,000 for injuries from the alleged assault"). The Court should accordingly allow Mr. Heppner to cross-examine Stein about potential bias arising from his arbitration against Mr. Heppner's company Beneficient.

The Court should likewise allow Mr. Heppner to cross-examine defense witnesses Chavenson, Schnitzer, Sabes, and Stone about civil cases filed against them or involving them— all of which allege wrongdoing in connection with conduct related to the charged crimes in this case. The cross-examination will not seek to show that these allegations are true, but rather to show that the civil suits provide a strong motivation for these witnesses to testify in a way that absolves themselves of guilt by pointing the finger at Mr. Heppner.

For example, in an adversary proceeding filed by the litigation trustee against Chavenson, Schnitzer, Mr. Heppner, and others, the trustee alleged that Chavenson "actively colluded with . . . Heppner [and others] and/or otherwise approved transactions to benefit [Beneficient], even

28

though they knew that those transactions were against GWG's best interests . . . ."  (*Goldberg v. Heppner, et al.,* Adv. Pro. No. 24-3090, ECF 3 at ¶ 21 (S.D. Tex. Apr. 19, 2024)).  The trustee further alleged that Schnitzer, Mr. Heppner, and others tried "to [c]over [u]p [s]erious [c]oncerns [r]aised by [t]hree [d]irectors [w]ho [r]esigned from [b]oth GWG's and [Beneficient]'s Board." (*Id.* at 74).

Similarly, in another adversary proceeding filed by the litigation trustee against Foley, the trustee alleged that Stone and others from Foley committed malpractice by "act[ing] as a fixer for corrupt insiders" by, among other things, "negotiat[ing], encourag[ing], and facilitat[ing] transactions that were patently unfair to GWG at the behest of GWG's group of controlling shareholders" including Mr. Heppner.  (*Goldberg v. Foley & Lardner, LLP,* Adv. Pro. No. 24-03199, ECF 1 at ¶ 3 (S.D. Tex. Sept. 27, 2024)).

And finally, in yet another adversary proceeding filed by the litigation trustee against Mr. Sabes, the trustee alleged that Mr. Sabes and others caused GWG to pay them a dividend despite the fact that GWG was insolvent as a result of its transactions with Mr. Heppner's company, Beneficient.  (*Goldberg v. Sabes, et al.,* Adv. Pro. No. 24-03089, ECF 38 at ¶¶ 38-39 (S.D. Tex. June 18, 2024)).

As with the cross-examination of Mr. Stein about the arbitration he filed, Mr. Heppner will cross-examine Chavenson, Schnitzer, Stone, and Sabes about the civil actions against or involving them to show that the allegations in the civil suits provide a strong motivation for the witnesses to testify in a way that absolves themselves of guilt by pointing the finger at Mr. Heppner.  Mr. Heppner will not seek to show that the allegations in the complaints are true, as many are also against Mr. Heppner.  The civil actions will instead be used to show the witnesses's bias.

29

For this reason, all the authorities and cases cited by the Government are inapplicable. (*See* Mot. at 38-40). Those cases and authorities deal with the different and inapposite situation where a defendant is attempting to use separate civil actions to attack a witness's character for truthfulness or show that the witnesses committed the wrongdoing alleged in those actions. (*See id.*). Here, the civil actions are being used to show bias—the existence of these civil actions give the witnesses a personal stake in the outcome of the criminal matter. The Court must allow Mr. Heppner to cross-examine the witnesses on them.

## CONCLUSION

For the reasons set forth above, Mr. Heppner respectfully requests that the Court deny the Government's Motion *in Limine*.

Respectfully submitted,

Dated: April 14, 2026

*/s/ Benjamin A. O'Neil*
Benjamin A. O'Neil
Robert Zink
John ("Fritz") Scanlon
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
555 13th Street NW, Suite 600
Washington, DC 20005
(202) 538-8151
benoneil@quinnemanuel.com
robertzink@quinnemanuel.com
fritzscanlon@quinnemanuel.com

Christopher J. Clore
295 5th Avenue, 9th Floor
New York, NY 10016
(212) 849-7000
christopherclore@quinnemanuel.com

*Counsel for Defendant Bradley Heppner*

30